IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| VISIBLE CONNECTIONS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ZOHO CORPORATION,<br><br>    Defendant. | CIVIL ACTION NO. 1:18-cv-859<br><br>**JURY TRIAL REQUESTED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Visible Connections, LLC ("VisiCon" or "Plaintiff") files this Complaint for Patent Infringement against Defendant Zoho Corporation ("Zoho" or "Defendant"), and states as follows:

## THE PARTIES

1.      Plaintiff is a limited liability company organized and existing under the laws of the State of Georgia, having its principal office at 4725 Peachtree Corners Circle Day Building, STE 230, Peachtree Corners, GA 30092.

2.      Defendant is a California corporation who may be served via its registered agent, Rodrigov Vaca at 9390 Research Blvd, Building II, Suite 440, Austin, Texas 78759.

## JURISDICTION AND VENUE

3.      This Court has exclusive subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a) on the grounds that this action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285.

4.      This Court has personal jurisdiction over Defendant on the grounds that Defendant maintains has minimum contacts with the State of Texas, and Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas, including through the sale and offer for sale of products accused of infringement in this action throughout the State of Texas and this Judicial District.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b) on the grounds that Defendant has committed acts of infringement and has a regular and established place of business in this Judicial District.

6.      Defendant has a regular and established place of business in this Judicial District at 3910 S, IH 35, Suite 100, Austin, Texas 78704.

7.      Zoho Corporation states on its website (www.zoho.com) that is has an Austin office.

Zoho Corporation
3910 S, IH 35, Suite 100
Austin,
Texas 78704, USA

## FACTUAL BACKGROUND

8.     Plaintiff is the owner by assignment of all right, title and interest in and to United States Patent Number 6,665,392 B1, entitled "Associating Data Connections With Conference Call Telephone" ("the '392 Patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the United States Patent and Trademark Office ("USPTO").

9.     A true and correct copy of the '392 Patent is attached hereto as Exhibit A.

10.     The application that became the '392 Patent was filed on July 3, 2000 and was assigned U.S. patent application number 09/610,566 ("the '566 Application").

11.     The '566 Application is based on, and claims the benefit of Provisional Application 60/132,572, ("the '572 Provisional Application") which was filed on May 5, 1999.

12.     The '392 Patent issued on December 16, 2003, after a full and fair examination by the USPTO.

13.     The '392 Patent is valid and enforceable.

14.     Plaintiff is the owner by assignment of all right, title and interest in and to United States Patent Number 7,284,203 B1, entitled "Method and Apparatus for Application Sharing Interface" ("the '203 Patent"), including the right to sue for all past, present, and future infringement, which assignment was duly recorded in the USPTO.

15.     A true and correct copy of the '203 Patent is attached hereto as Exhibit B.

16.     The application that became the '203 Patent was filed on July 27, 1999 and was assigned U.S. patent application number 09/362,014 ("the '014 Application").

17.     The '203 Patent issued on October 16, 2007, after a full and fair examination by the USPTO.

18.     The '203 Patent is valid and enforceable.

## SUBJECT MATTER OF THE '392 PATENT

19.     The '392 Patent describes a method for operationally associating a participant's telephone connection to a conference call system with a data connection via the internet. As described in the figure below the system associates the user's telephone connection with the user's web connection.



**FIG. 3**

20.  The '392 Patent recognized that, by the time the '566 Application was filed in 2000, "Conference call systems that integrate personal computers with telephones often need to establish an operational association between a user's computer screen and that user's telephone line." '392 Patent 1:25-28.

21.  The '392 Patent provides several advantages over the prior art: a) participants do not have to pre-register with the system to enjoy its benefits and capabilities; b)

participants do not have to remember a personal identification number from one conference to the next (a unique temporary code is generated) and c) the conference host can broadcast the details about joining the call via email or other medium without the necessity of sending individualized invitations to participants each with a unique access code. This improvement allows conference organizers and participants to eliminate some of the barriers to connection that were present in the prior art.

22. These problems were overcome by the '392 Patent by 1) generating a unique temporary code when a data connection is established between the participant and said conference call system; 2) displaying the code over the data connection to the participant on that participant's computer screen; and 3) instructing the participant to enter the code over his telephone connection to the conference call system. '392 Patent, 2:34-45.

23. For example, in a web then dial-in scenario, the operational association between the participant's telephone and data connections is accomplished by: 1) establishing a data connection between the participant's computer screen and the conference system; 2) receiving a conference access code from the participant for a specific conference call; 3) generating a PIN (personal identification number) code unique to the specific conference; 4) sending the PIN code over the participant's data connection to the participant's computer: 5) displaying dialing instructions on the

participant's computer screen explaining to the participant how to enter the conference; 6) dialing into the conference call according to the displayed dialing instructions; 7) establishing an operational association between the participant's data and telephone connections; and 8) displaying a conference control web page specific to the participant and the participant's telephone connection. '392 Patent, 2:56-3:5.

24.     The '392 Patent recognized that "[i]n the past, systems have typically solved the operational association problem by pre-registering each participant with a unique ID (identification)." '392 Patent 1:49-51.

25.     The '392 Patent described the operation of the pre-registering technique described in the preceding paragraph: "[w]hen participants dial in to the conference bridge, they must not only enter their conference codes but must also enter their unique personal IDs, using the same personal ID when connecting to the system from a computer over the data network." '392 Patent, 1:51-55.

26.     The '392 Patent noted certain problems with the approach described in the preceding two paragraphs: "[u]nregistered participants cannot be identified. Drawbacks to this approach are that participants must be pre-registered to enjoy the full benefits of the user interface and must also remember their personal identification numbers." '392 Patent, 1:55-59.

27.     The '392 Patent provides technical solutions to these and other deficiencies in the prior art: "This invention enables a conference call system to establish efficiently

an operational association between a particular user's computer on a public data network (e.g., a web browser on the Internet world wide web and that same user's telephone on the public switched telephone network (PSTN)." '392 Patent at 1:62-67.

28. For example, the '392 Patent addresses at least one deficiency in the art by providing that: "[i]n accordance with the invention, a participant's telephone connection to a conference call system is operationally associated with a data connection from that participant's computer screen to a conference call system which establishes voice connections between itself and multiple conference call participants by: (1) generating a unique temporary code when a data connection is established between the participant and said conference call system; (2) displaying the code over the data connection to the participant on that participant's computer screen; and (3) instructing the participant to enter the code over his telephone connection to the conference call system." '392 Patent, 2:34-45.

29. These technological improvements to the prior art provide greater flexibility and ability to establish an operational association between a user's computer and a data connection and the same user's phone connection are reflected in various claims of the '392 Patent.

## SUBJECT MATTER OF THE '203 PATENT

30. The '203 Patent describes a method and apparatus for application sharing. An interface program facilitates application sharing by reducing it to a process that hides underlying details from a user.

31. The invention relates generally to an interface program for sharing an application program between two or more computers, and more specifically, to an interface program to an underlying conferencing program having an application sharing capability. '203 Patent, 1:5-10.

32. The '203 Patent recognized, that by the time the '014 Application was filed, there were computer systems on which "[s]ome application programs allow a computer system user to contemporaneously share electronic media with users of other computer systems ("application sharing")" and that "[t]hese programs conventionally comprise some level of conferencing capability." '203 Patent, 1:26-31.

33. The '203 Patent also recognized that there were certain problems with these "application sharing" and "conferencing" programs in that "these conferencing programs require knowledge on how to use them for conferencing and require knowledge on how to configure them for application sharing." '203 Patent, 1:39-42.

34. The '203 Patent also recognized that "it would be desirable to enable a user to share applications without having to have any knowledge of an underlying

application" and that "[t]hus, an application sharing interface is needed which is easier to use than those heretofore." '203 Patent, 1:56-60.

35.    The '203 Patent provided a technical solution for problems in the prior art because the claimed subject matter of the '203 Patent "provides method[s] and apparatus for an application-sharing interface. More particularly, an aspect of the present invention is an interface program for application sharing. This interface program facilitates application sharing by reducing prior art complexity associated therewith. In particular, this interface program allows application sharing to be minimally established by selecting one or more documents to be shared and one or more participants with whom to share such one or more documents. After which, connectivity and any associated activity is automatically initiated." '203 Patent, 1:64 – 2:7. Further to the specifics of the solution provided by the '203 Patent's claimed subject matter, the interface program "uses two user steps for invoking application sharing: accordingly, in any order selecting one or more documents [ ] and selecting one or more persons [ ]. Notably, a set of documents or a set of persons may be selected to avoid having to select individual documents or participants." '203 Patent, 4:35-37.

## ZOHO CORPORATION



36.     Zoho is a company that provides a variety of solutions for businesses.

37.     Zoho provides operating systems for business.

38.     Zoho bundles its various products and names their bundles, CRM Plus, Workplace, Finance Plus and IT Management.



39.     Zoho's CRM Plus unifies customer-facing teams with a single all-in-one software and provide visibility of every customer interaction.

40.     Zoho's CRM Plus product include inter-team communication features.

41.     Zoho's CRM Plus product includes Cliq which include video conferencing.



42. Zoho's CRM Plus product features include video conferencing.



43. Zoho's Workplace branded product includes video conferencing.



44.     Zoho's Workplace product includes its Showtime and Meeting applications.

45.     Zoho's Workplace product includes "a robust web conferencing solution for [] business."



46.     Zoho's product called "Zoho Meeting" includes features for sharing applications with video-conferencing members.



47.     Zoho's product called "Showtime" includes features for sharing applications with video-conferencing members.



48. Zoho represents that its web conferencing solution is "robust."

49. Zoho's offerings include web conferencing solutions that "host product launches, feature demonstrations, sales presentations, lead-nurturing webinars, user education webinars, and online meetings."

50. Zoho offers on demand or appoint via self-service audio conferencing products and services.

51. Zoho's products and services include conferencing products: Meeting, Showtime, Cliq, Zoho One, CRM Plus, Workplace and other branded solutions including video conferencing solutions.

52. Zoho provides a knowledge base which teaches users how to take advantage of the capabilities of its products.



## COUNT I – DIRECT PATENT INFRINGEMENT OF '392 PATENT

53.    Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

54.    Defendant has directly infringed the '392 Patent in violation of 35 U.S.C. § 271(a) by performing methods, including its own use and testing Meeting, Cliq, Zoho One, CRM Plus, Workplace and other branded solutions including video conferencing solutions with the same or similar features and functionality ("Accused Products") that embody the patented invention, including at least claim 1.

55.    Defendant's infringing Accused Products include, without limitation, its Meeting, Cliq, Zoho One, CRM Plus, Workplace and other branded solutions

including video conferencing solutions with the same or similar features and functionality that satisfy each element of one or more asserted claims.

56.     The Accused Products satisfy each and every element of each asserted claim of the '392 Patent either literally or under the doctrine of equivalents.

57.     Defendant provides accurate information concerning its Meeting, Cliq, Zoho One, CRM Plus, Workplace and other branded solutions including video conferencing solutions at www.zoho.com.

58.     Defendant provides accurate information concerning its Meeting product in its Meeting Knowledge Base and User Guide.

59.     Defendant provides accurate information concerning its Meeting product in its Knowledge Base/Zoho Meeting/User Guide/Introduction section of its website at https://help.zoho.com/portal/kb/articles/introduction-about-zoho-meeting.

60.     According to https://help.zoho.com/portal/kb/articles/system-requirements, Zoho Meeting "all you need to use Zoho Meeting is a computer with a compatible operating system, built-in or attached speakers and microphone (or a desk phone) for audio transmission, a web camera for video transmission, and a supported web browser with a good internet connection."

61.     The Zoho Accused Products are "meeting and collaboration applications" that operationally associates a participant's telephone connection to a conference call system (e.g. Zoho Meeting) with a data connection from said participant's computer

screen to a conference call system (e.g. Zoho Meeting), wherein the Zoho Accused Products establish voice connections between itself and multiple conference call participants.

62.    With the Zoho Accused Products, participants can be dial in to the conference call system, or connect via VoIP.

63.    The Zoho Accused Products allow participants to enter a dial-in number followed by the conference code and pin.



64.    As shown in the image below, in Zoho Meeting, the code is displayed to the participant over the participant's computer screen.



65.    In Zoho Meeting, when the participant, chooses "dial in," the participant is instructed via voice prompt to enter the unique code (as well as a conference code) over their telephone connection to Zoho Meeting.  The image above shows the selection of "dial in."

66.    In Zoho Meeting, a participant  has established a data connection and a phone (audio) connection after choosing "dial in."

67.    In Zoho Meeting after entering the unique code, the data connection and the phone connection are operationally associated.

68.    Defendant's infringing activities are and have been without authority or license under the '392 Patent.

69.     Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

### COUNT II – INDUCED PATENT INFRINGEMENT OF '392 PATENT

70.     Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

71.     Since the filing of this lawsuit Defendant has actively and intentionally, with knowledge of the '392 Patent and Plaintiff's claims of infringement, induced the direct infringement by others of at least claim 1 of the '392 Patent in violation of 35 U.S.C. § 271(b), in performing methods that embody the patented invention as described in Count I, above.

72.     Furthermore, as detailed in Count I above, Defendant has instructed its customers to use the Accused Methods in an infringing manner.

### COUNT III – DIRECT PATENT INFRINGEMENT OF '203 PATENT

73.     Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

74.     Defendant has directly infringed the '203 Patent in violation of 35 U.S.C. § 271(a) by making, using (including its own use and testing), selling, or offering to sell in the United States, or importing into the United States systems and/or products

("Accused Products") that embody the patented invention, including at least claims 34-39.

75. Defendant's infringing Accused Products include, without limitation, Meeting, Showtime, Cliq, Zoho One, CRM Plus, Workplace and other branded solutions that include the same features or functionality that satisfy each element of one or more asserted claims.

76. The Accused Products satisfy each and every element of each asserted claim of the '203 Patent, as detailed herein, either literally or under the doctrine of equivalents.

77. According to https://help.zoho.com/portal/kb/articles/introduction-about-zoho-meeting, Defendant's Zoho's Meeting includes features that allow the meeting host to "switch between sharing applications and screens during sessions."

78. According to https://help.zoho.com/portal/kb/articles/showtime-voice-video-and-screen-share#Can_my_attendees_interact_with_me, Defendant's Zoho's ShowTime includes features to "share a presentation" with video-conferencing audience members.

79. According to the Zoho knowledge base the Zoho Accused Products include "shar[ing] . . . a presentation."

80. The Zoho Accused Products include a call manager having an interface program, namely the Zoho Showtime and Meeting downloadable software.

81.     According to https://help.zoho.com/portal/kb/articles/start-a-webinar, during a Zoho webinar you can share a specific application window with attendees.

82.     The Knowledge Base information provided by Zoho at https://help.zoho.com/portal/kb/articles/start-a-webinar,  accurately describes the functionality of the Zoho product.



83.     Zoho's Knowledge Base instructs users how to use Zoho's Showtime application.

84.  Zoho's Knowledge Base includes instructions to "Screen share" at https://help.zoho.com/portal/kb/articles/deliver-a-remote-session-using-showtime-web#Screen_share.

85.  Zoho's Knowledge Base instructions at https://help.zoho.com/portal/kb/articles/deliver-a-remote-session-using-showtime-web#Screen_share are accurate.

**Screen share**

When you select Screen share on the **Options** page, you will be prompted to select Your entire screen, Application window, or Browser Tab. Select one and click **Share**.

Google Chrome users have to install the extension to use ShowTime's screen share.



Choose what you would like to share: Your Entire Screen, Application Window, or Browser Tab. Select one and click **Share.**

- *Your Entire Screen* - Share your entire screen with attendees.
- *Application Window* - Share a particular application window with attendees. They wil able to view only the application and nothing else on your screen.
- *Browser Tab* - Share a particular browser tab with your attendees.





When you share a screen, your attendees will be able to view the shared screen on their mobile devices or laptops. When the live streaming begins you will see "Screen share is in progress. Your attendees can view the screen that you choose to share." During the process of choosing an application to share, your attendees will see the screen "Trainer is gearing up for the session. Please wait."

**To switch between screens during screen share:**

If you would like to share a different screen with your attendees, click the Screen Share icon. A screen share pop-up will prompt you to choose what you would like to share with your attendees.

**Stop Sharing**

Once you're done, click Stop Sharing. If the session was started with a presentation, you'll be returned to it. If the session was started directly with screen share, when you click Stop Sharing you will be taken back to the Options page to choose a Presentation or Screen share. Your attendees will still be able to hear and see you. You can also still conduct polls and receive the questions attendees pose.

**Exit**

Once the session is completed, click Exit in the bottom-left corner of the screen. You will be prompted if you want to end click End Broadcast to quit the session. Request attendees to provide a rating and feedback when they are prompted.

86.     The instruction above teach users how to share an application window.

87.     Zoho's Showtime allows the meeting host to share a particular application window with attendees and "[t]hey will be able to view only the application and nothing else on your screen."  *See* https://help.zoho.com/portal/kb/articles/deliver-a-remote-session-using-showtime-web#Screen_share.

88.     The Zoho Knowledge Base provides instructions for downloading, installing and using the Zoho Accused Products.

89.     When the Zoho Accused Products are used for their intended purposes they includes a plurality of communication devices for electrical communications with the call manager.

90.    The Zoho Knowledge Base (as shown below), demonstrates that the intended purpose and use of Zoho Meeting is as a "web conferencing tool that lets you host webinars and conduct meetings online."



91.    In operation, the Accused Products (as seen in the image below) demonstrates that each of a plurality of communication devices is put into electrical communication with Zoho Meeting and Showtime.



92.     The Zoho Meeting includes an interface for receiving calls from (Dial In) the plurality of communication devices.  This connectivity is then used for application sharing.



93.    The Zoho Accused Products maintains status information regarding the connectivity of participants including the current number of active participants.

94.    The picture below shows the number of active participants (one) in the upper left corner by the indication "Attendees(1)."



95.    The Zoho Accused Products provide software within the interface program that automatically establishes at least a substantially real-time shared viewing of at least one document between at least one audience member and a host user, wherein the host user only selects the at least one document to be shared and the at least one audience member with whom to share the at least one document to initiate the substantially real-time shared viewing.

96.    After the connections described above have been established, the Host can select the share a presentation or screen share which then reveals a list of application windows as well as documents.  Thereafter, the Host can select the document for sharing.





97.     After clicking the share button, the selected document is shared with the other participant on the conference.





98.     The Zoho Accused Products include a list of active participants.



99.   Defendant's infringing activities are and have been without authority or license under the '203 Patent.

100.   Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT IV – INDUCED PATENT INFRINGEMENT OF '203 PATENT

101.   Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

102.   Defendant has actively and intentionally, with prior knowledge of the '203 Patent and Plaintiff's claims of infringement, induced the direct infringement by others of at least claims 34-39 of the '203 Patent in violation of 35 U.S.C. § 271(b), in making, using, selling, or offering to sell in the United States, or importing into the United States Accused Products embody the patented invention as described in Count III, above.

103.   Furthermore, Defendant has instructed its customers to use the Accused Products in an infringing manner.

## JURY DEMAND

104.   Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Fed. R. Civ. P. 38.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

A.    An adjudication that one or more claims of the '392 Patent have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

B.    An adjudication that one or more claims of the '203 Patent have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

C.    An accounting and an award to Plaintiff of damages adequate to compensate Plaintiff for the Defendant's acts of infringement, together with pre-judgment and post-judgment interest and costs pursuant to 35 U.S.C. § 284;

D.    That Defendant's infringement be found to be willful, and that the Court award enhanced damages pursuant to 35 U.S.C. § 284;

E.    That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and expenses in accordance with 35 U.S.C. § 285; and

F.    Any further relief that this Court deems just and proper.

Respectfully submitted this 10th day of October, 2018.

By: */s/ Jennifer Tatum Lee*
    Jennifer Tatum Lee
    State Bar No. 24046950
    jennifer@connorkudlaclee.com
    Kevin S. Kudlac
    State Bar No. 00790089
    kevin@connorkudlaclee.com
    Cabrach J. Connor
    State Bar No. 20436390
    cab@connorkudlaclee.com

    **CONNOR KUDLAC LEE PLLC**
    609 Castle Ridge Road, Suite 450
    Austin, Texas 78746
    512.777.1254 Telephone
    888.387.1134 Facsimile

    **ATTORNEYS FOR PLAINTFF**