IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| VISIBLE CONNECTIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ZOHO CORPORATION,<br><br>Defendant. | CIVIL ACTION NO. 1:18-CV-859-RP<br><br>**JURY TRIAL REQUESTED** |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Visible Connections, LLC ("VisiCon" or "Plaintiff") files this First Amended Complaint for Patent Infringement against Defendant Zoho Corporation ("Zoho" or "Defendant"), and states as follows:

## THE PARTIES

1. Plaintiff is a limited liability company organized and existing under the laws of the State of Georgia, having its principal office at 4725 Peachtree Corners Circle Day Building, STE 230, Peachtree Corners, GA 30092.

2. Defendant is a California corporation. Zoho has been served and has appeared.

## JURISDICTION AND VENUE

3. This Court has exclusive subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338(a) on the grounds that this action arises

under the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*., including, without limitation, 35 U.S.C. §§ 271, 281, 284, and 285.

4.     This Court has personal jurisdiction over Defendant on the grounds that Zoho maintains has minimum contacts with the State of Texas and has purposefully availed itself of the privileges of conducting business in the State of Texas including through the sale and offer for sale of products accused of infringement in this action throughout the State of Texas and this judicial district.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b) on the grounds that Defendant has committed acts of infringement and has a regular and established place of business in this judicial district.

6.     Zoho maintains a regular and established place of business at 3910 S, IH 35, Suite 100, Austin, Texas 78704.

7.     Zoho Corporation lists an Austin office address on its website (www.zoho.com):

Zoho Corporation
3910 S, IH 35, Suite 100
Austin,
Texas 78704, USA

## FACTUAL BACKGROUND

8.      VisiCon is the owner by assignment of all right, title and interest in and to United States Patent Number 6,665,392 (the "'392 Patent") , titled "Associating Data Connections With Conference Call Telephone" including the right to sue for all past, present, and future infringement.

9.      A true and correct copy of the '392 Patent is attached hereto as Exhibit A.

10.     The '392 Patent issued from application no. 09/610,566 (the "'566 Application") filed on July 3, 2000.

11.     The Patent Office granted the '392 Patent on December 16, 2003, after a full and fair examination.

12.     The '392 Patent is valid and enforceable.

13.     VisiCon is the owner by assignment of all right, title and interest in and to United States Patent Number 7,284,203 (the "'203 Patent"), titled "Method and Apparatus for Application Sharing Interface" including the right to sue for all past, present, and future infringement.

14.     A true and correct copy of the '203 Patent is attached hereto as Exhibit B.

15.     The '203 Patent issued from application no. 09/362,014 filed on July 27, 1999 (the "'014 Application").

16. The Patent Office granted the '203 Patent on October 16, 2007, after a full and fair examination.

17. The '203 Patent is valid and enforceable.

## SUBJECT MATTER OF THE '392 PATENT

18. The '392 Patent describes a method for operationally associating a participant's telephone connection to a conference call system with a data connection via the internet.

19. The '392 Patent is directed to solving problems particular to conferencing programs and the claimed subject matter relates to telecommunications conferencing. '392 Patent, 1: 19-22.

20. As described in the figure below the system associates the user's telephone connection with the user's web connection.



FIG. 3

21.     The inventors of the '392 Patent recognized that "Conference call systems that integrate personal computers with telephones often need to establish an operational association between a user's computer screen and that user's telephone

line." '392 Patent 1:25-28. By improving communication conferencing systems to associate data and voice connections, conference organizers and participants eliminate barriers to connecting to a conferencing system in systems existing at the time. This enabled faster and more efficient conference set-up and avoids a cumbersome pre-registration process requiring conference line reservation or distribution of access PIN codes in advance of a conference call.

22.     By associating voice and data communication lines on a conferencing system, the inventions claimed in the '392 Patent enables a conference administrator to identify data recipients and providers and associate them with active voice call participants.

23.     The '392 Patent provides several advantages over the prior art: a) participants do not have to pre-register with the system to enjoy its benefits and capabilities; b) participants do not have to remember a personal identification number from one conference to the next (a unique temporary code is generated) and c) the conference host can broadcast the details about joining the call via email or other medium without the necessity of sending individualized invitations to participants each with a unique access code. '392 Patent 2:1-8.

24.     The '392 Patent describes and claims a specific way to overcome connection and communication problems by 1) generating a unique temporary code when a data connection is established between the participant and said conference

call system; 2) displaying the code over the data connection to the participant on that participant's computer screen; and 3) instructing the participant to enter the code over his telephone connection to the conference call system. '392 Patent, 2:34-45.

25.     For example, in a web-then-dial-in scenario, the operational association between the participant's telephone and data connections is accomplished by: 1) establishing a data connection between the participant's computer screen and the conference system; 2) receiving a conference access code from the participant for a specific conference call; 3) generating a PIN (personal identification number) code unique to the specific conference; 4) sending the PIN code over the participant's data connection to the participant's computer: 5) displaying dialing instructions on the participant's computer screen explaining to the participant how to enter the conference; 6) dialing into the conference call according to the displayed dialing instructions; 7) establishing an operational association between the participant's data and telephone connections; and 8) displaying a conference control web page specific to the participant and the participant's telephone connection.  '392 Patent, 2:56-3:5.

26.     A person of ordinary skill in the art at the time of the invention would recognize that the steps and methods claimed in the '392 Patent were unconventional and describe associating conferencing lines of communication in a way that was not routine.

27.     The '392 Patent recognized that "[i]n the past, systems have typically solved the operational association problem by pre-registering each participant with a unique ID (identification)." '392 Patent 1:49-51.

28.     A person of ordinary skill in the art at the time of the invention would understand that the conventional way of solving these problems at the time of the invention was to pre-register users and provide unique personal IDs in addition to the conference codes on their connection via the public switched telephone network and on their computer over the data network.  A skilled artisan would recognize that convention presented redundancy and barriers to access that did not allow for dynamically establishing connections and associating the user's connection over the public switched telephone network with their data connection on the conference call system.

29.     The '392 Patent described the operation of the pre-registering technique described in the preceding paragraph: "[w]hen participants dial in to the conference bridge, they must not only enter their conference codes but must also enter their unique personal IDs, using the same personal ID when connecting to the system from a computer over the data network." '392 Patent, 1:51-55.

30.     The '392 Patent noted certain problems with this approach: "[u]nregistered participants cannot be identified. Drawbacks to this approach are that

participants must be pre-registered to enjoy the full benefits of the user interface and must also remember their personal identification numbers." '392 Patent, 1:55-59.

31.     The '392 Patent provides technical solutions to these and other deficiencies in the prior art: "This invention enables a conference call system to establish efficiently an operational association between a particular user's computer on a public data network (e.g., a web browser on the Internet world wide web and that same user's telephone on the public switched telephone network (PSTN)." '392 Patent at 1:62-67.

32.     For example, the '392 Patent addresses deficiencies in the art by providing that: "[i]n accordance with the invention, a participant's telephone connection to a conference call system is operationally associated with a data connection from that participant's computer screen to a conference call system which establishes voice connections between itself and multiple conference call participants by: (1) generating a unique temporary code when a data connection is established between the participant and said conference call system; (2) displaying the code over the data connection to the participant on that participant's computer screen; and (3) instructing the participant to enter the code over his telephone connection to the conference call system." '392 Patent, 2:34-45.

## FIG. 2



DATA STRUCTURES
THAT REPRESENT
INDIVIDUAL
TELEPHONE CONNECTIONS

DATA STRUCTURES
THAT REPRESENT
INDIVIDUAL
DATA CONNECTIONS

33.     As shown above in Figure 2, an operational association, represented by each of a plurality of arrows **39**, between a specific telephone connection and data connection is established when the unique identifier for a specific data connection is stored in the data structure for a specific telephone connection, or when the unique identifier for a particular telephone connection is stored in the data structure of a specific data connection.  In other words, the data structure representing a telephone connection can store a pointer that identifies a specific data connection, and the data structure representing a data network connection can store a pointer that identifies a telephone connection.  '392 Patent, 4:39-57.

34.     In the '392 Patent security and authentication of a user is improved

through operational association.  The '392 Patent claims a method to authenticate a

participant controlling a data connection with access to a telephone connection.  '392

Patent, 1:33-35

35.     Claim 1 of the '392 Patent states a method for operationally associating

a participant's telephone connection to a conference call system with a data

connection from said participant's computer screen to the conference call system:

> **1**. A method of operationally associating a participant's
> telephone connection to a conference call system with a data
> connection from said participant's computer screen to said
> conference call system, said conference call system estab-
> lishing voice connections between itself and multiple con-
> ference call participants, said method comprising the steps
> of:
>
> > generating a unique temporary code when a data connec-
> > tion is established between said participant and said
> > conference call system;
> >
> > displaying said code over said data connection to said
> > participant on that participant's computer screen; and
> >
> > instructing said participant to enter said code over his
> > telephone connection to the conference call system.

36.     Claim 5 of the '392 Patent depends from Claim 1 and specifies:

**5.** The method of claim **1** in which the operational association between said participant's telephone and data connections is accomplished by the steps of:

> establishing a data connection between said participant's computer screen and the conference system;
>
> receiving a conference access code from said participant for a specific conference call;
>
> generating a PIN (personal identification number) code unique to the specific conference;
>
> sending said PIN code over said participant's data connection to said participant's computer;
>
> displaying dialing instructions on said participant's computer screen explaining to said participant how to enter the conference;
>
> dialing into the conference call according to said displayed dialing instructions;
>
> establishing operational association between said first participant's data and telephone connections; and
>
> displaying a conference control web page specific to said participant and said participant's telephone connection.

37.     A person skilled in the art at the time of the invention would understand that the claims recite steps and structural limitations operating in an an unconventional manner to achieve an improved authentication and operational association of the telephone connection and the data connection in the conference call system.

38.     These technological improvements provide greater flexibility for participant log-in and participation by establishing an operational association between a user's computer and a data connection and the same user's phone connection.

39.     The novel use and arrangement of the specific combinations and steps recited in the '392 claims were not well-understood, routine, or conventional to a person skill in the relevant field at the time of the inventions.

## SUBJECT MATTER OF THE '203 PATENT

40.     The '203 Patent describes a method and apparatus for application sharing.  The claimed subject matter of the '203 Patent relates to improvements to computer functionality and user interfaces for electronic devices used in conferencing systems.  '203 Patent, 1:6-10.

41.     The '203 Patent is directed to real-time application sharing via a conferencing interface program that maintains connectivity status and active participant information.

42.     The inventors of the '203 Patent recognized that "[s]ome application programs allow a computer system user to contemporaneously share electronic media with users of other computer systems ("application sharing")" and that "[t]hese programs conventionally comprise some level of conferencing capability." '203 Patent, 1:26-31.  But they noted that these had problems.

43.     These prior conferencing systems lacked status information pertaining to participants, so administrators and other conference participants were unable view shared documents with known participants, unable to know who was viewing a shared document, and unable to assess audience size or participation.  The '203

Patent addressed these shortcomings by using an interface program in cooperation with a call manager to maintain this information during a conference call. This enabled real-time shared viewing between at least one audience member and a host user having up-to-the-moment user information.

44.     The inventors recognized and addressed operational problems with existing systems because "these conferencing programs require knowledge on how to use them for conferencing and require knowledge on how to configure them for application sharing." '203 Patent, 1:39-42. The '203 Patent describes and claims a solution to sharing a document (as opposed to simply sharing a window) in real-time with audience members in connection with maintaining status information about the audience members that is available to the host for improved conference administration.

45.     The inventors recognized that "it would be desirable to enable a user to share applications without having to have any knowledge of an underlying application" and that "[t]hus, an application sharing interface is needed which is easier to use than those heretofore." '203 Patent, 1:56-60.

46.     The claimed subject matter of the '203 Patent provides a technical solution to problems in the prior art by "provid[ing] method[s] and apparatus for an application-sharing interface. More particularly, an aspect of the present invention is an interface program for application sharing. This interface program facilitates

application sharing by reducing prior art complexity associated therewith. In particular, this interface program allows application sharing to be minimally established by selecting one or more documents to be shared and one or more participants with whom to share such one or more documents. After which, connectivity and any associated activity is automatically initiated." '203 Patent, 1:64 – 2:7.

47. In an embodiment described in the '203 Patent, the interface program "uses two user steps for invoking application sharing: accordingly, in any order selecting one or more documents [ ] and selecting one or more persons [ ]. Notably, a set of documents or a set of persons may be selected to avoid having to select individual documents or participants." '203 Patent, 4:35-37.

48. Claims 34 and 35 of the '203 Patent recite:

> **34**. A system for application sharing, comprising:
> a call manager, the call manager having an interface program;
> a plurality of communication devices for electrical communication with the call manager;
> the call manager configured to manage calls to and from the plurality of communication devices for establishing connectivity for the application sharing; and
> the interface program in cooperation with the call manager configured to maintain status information regarding the connectivity, the status information including current number of active participants.

**35**. The system of claim **34**, wherein the interface program automatically establishes at least a substantially real-time shared viewing of at least one document between at least one audience member and a host user, wherein the host user only selects the at least one document to be shared and the at least one audience member with whom to share the at least one document to initiate the substantially real-time shared viewing.

49.     A person skilled in the art at the time of the inventions claimed in the '203 Patent would recognize that then-existing systems lacked real-time shared viewing and user status information.

50.     A person skilled in the art at the time of the invention would understand that the improvements of claim 35 of the '203 Patent allow the users to share documents (as opposed to application windows) and view status information regarding connectivity and a current number of active participants.

51.     Claim 36 of the '203 Patent includes the additional limitation of providing an active list of names of the participants as shown in Fig. 11F below.



FIG. 11F

## ZOHO CORPORATION



52.     Zoho is a company that provides a variety of software solutions for businesses.

53.     Zoho provides operating systems for businesses.

                                Customers   Support   Contact Sales   |   Access your apps

### Your Life's Work, Powered By Our Life's Work

Unique and powerful suite of software to run your entire business, brought to you by a
company with the long term vision to transform the way you work.
Experience the Operating System for Business.

54.     Zoho provides stand-alone branded solutions for audio and video conferencing.

55.     Some of the stand-alone Zoho branded solutions for audio and video conferencing are Zoho Meeting and Zoho Showtime.

56.     Zoho Meeting and Zoho Showtime have similar functionality and features.

57.     Zoho sells its solutions on an application by application subscription basis.

58.     Zoho's offerings include web conferencing solutions that "host product launches, feature demonstrations, sales presentations, lead-nurturing webinars, user education webinars, and online meetings."

59.     Zoho offers on demand or appoint via self-service audio conferencing products and services.

60.     Zoho allow for "instant" meetings (including voice and data connections) or prescheduled meetings.




**Instant and scheduled meetings**

Set up meetings and send invitation emails to participants, or hold instant meetings to connect quickly and make decisions faster. Get notified in advance about who can make it to your meeting, with RSVPs.

61.     Zoho's products and services include the ability to connect to audio using toll-free and local dial-in numbers.



**Audio, video, and screen sharing**

Connect to audio using your phone or computer. Use toll-free or local dial-in numbers to join meetings from your phone. Transmit video using from any camera device . Share your entire screen, an application, or a monitor, and give participants control of your screen when you need to.

62.     Zoho's products and services include the ability to share an application (including a document) between the host and audience members.



**Present with audio, video, and screen sharing**

Host video webinars and share your screen, an application window, or another monitor to make a presentation or demo. Transmit audio using your computer, or dial a local or toll-free number to connect through your phone.

63.     Zoho also bundles its various products and has named the bundles, CRM Plus, Workplace, Finance Plus and IT Management.



64.     Zoho's CRM Plus unifies customer-facing teams with a single all-in-one software and provide visibility of every customer interaction.

65.     Zoho's CRM Plus product include inter-team communication features.

66.    Zoho's CRM Plus product includes Cliq which has audio and video conferencing.



67.    Zoho's CRM Plus product features include video conferencing.



68.     Zoho's Cliq allows users to make audio and video calls, share files including on their mobile devices and on their computer screens.



69.     Zoho's Cliq includes features that provide for shared viewing of documents between an audience member and a host user.



70.     Zoho's Workplace branded product includes video conferencing.



71.     Zoho's Workplace product includes its Showtime and Meeting applications.

72.     Zoho's Workplace product includes "a robust web conferencing solution for [] business."



73. Zoho's product called "Zoho Meeting" includes features for associating a participant's telephone connection with their data connection and sharing applications with video-conferencing members.



74. Zoho's product called "Showtime" includes features for sharing applications with video-conferencing members.



75. Zoho's products and services include conferencing products: Meeting, Showtime, Cliq, Zoho One, CRM Plus, Workplace and other branded solutions including audio and video conferencing solutions.

76. Zoho provides a knowledge base which teaches users how to take advantage of the capabilities of its products.

77. Zoho provides accurate information concerning its Meeting product in its Meeting Knowledge Base and User Guide.

78. Zoho provides accurate information concerning its Meeting product in its Knowledge Base/Zoho Meeting/User Guide/Introduction section of its website at https://help.zoho.com/portal/kb/articles/introduction-about-zoho-meeting.

79. Zoho provides accurate information concerning its Showtime product in its Showtime Knowledge Base and User Guide.

80.     Zoho provides training and frequent webinars to instruct end users how to use its products.

## COUNT I – DIRECT PATENT INFRINGEMENT OF '392 PATENT

81.     Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

82.     Defendant has directly infringed the '392 Patent in violation of 35 U.S.C. § 271(a) by performing methods, including its own use and testing Meeting, Zoho One, CRM Plus, Workplace and other branded solutions including audio and video conferencing solutions with the same or similar features and functionality ("Accused Products") that embody the patented inventions of claims 1 and 5.

83.     Defendant's infringing Accused Products include, without limitation, Zoho Meeting, Zoho One, CRM Plus, Workplace and other Zoho solutions including audio and video conferencing solutions with the same or similar features and functionality that satisfy each element of one or more asserted claims.

84.     The Accused Products satisfy each and every element of each asserted claim of the '392 Patent either literally or under the doctrine of equivalents.

85.     According     to     https://help.zoho.com/portal/kb/articles/system-requirements, for Zoho Meeting "all you need to use Zoho Meeting is a computer with a compatible operating system, built-in or attached speakers and microphone

(or a desk phone) for audio transmission, a web camera for video transmission, and a supported web browser with a good internet connection."

86.     The Zoho Accused Products are "meeting and collaboration applications" that operationally associates a participant's telephone connection to a conference call system (e.g. Zoho Meeting) with a data connection from said participant's computer screen to a conference call system (e.g. Zoho Meeting), wherein the Zoho Accused Products establish voice connections between itself and multiple conference call participants.

87.     The Zoho Accused Products include options to have an "instant" meeting or to schedule a meeting in advance.



88. With the Zoho Accused Products, participants can dial-in to the conference call system.

89. Zoho's Accused Products establish a data connection between the participants computer and the conference system (e.g. Zoho Meeting).

90. Zoho's Accused Products provide a "meeting key" that can be shared through email or through other emails (e.g. copied link). That meeting key or conference access code is specific to the conference call.

Ask participants to visit **meet.zoho.com** and enter this key

122 763 6781

(or) Simply send this link

https://meetinglab.zoho.com/join?key=1227636781

91.    Upon receiving the conference access code, the Zoho Accused Products generate a personal identification number unique to the conference and send the personal identification number over the participant's data connection.

92.    The Zoho Accused Products allow participants to enter a dial-in number followed by the conference code and pin.



93.     The Zoho Accused Products display dialing instructions on the participant's computer screen explaining how to enter the conference.



94.     As shown in the image above, in Zoho Meeting, the code is displayed to the participant over the participant's computer screen.

95.     In the Zoho Accused Products, when the participant, chooses "dial in," the participant is instructed via voice prompt to enter the unique code (as well as a conference code) over their telephone connection to the Zoho Accused Products. The image above shows the selection of "dial in."

96.     In the Zoho Accused Products, a participant has established a data connection and a phone (audio) connection after choosing "dial in."

97.     In the Zoho Accused Products after entering the unique code, the data connection and the phone connection are operationally associated.

98.     In the Zoho Accused Products the conference control web page specific to that participant and the participant's telephone connection is displayed.



99. Defendant's infringing activities are and have been without authority or license under the '392 Patent.

100. Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT II – INDUCED PATENT INFRINGEMENT OF '392 PATENT

101. Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

102. Since the filing of this lawsuit and service of the Original and Amended Complaint, Defendant has actively and intentionally, with prior knowledge of the '392 Patent and Plaintiff's claims of infringement, induced the direct infringement by others of 1 and 5 of the '392 Patent in violation of 35 U.S.C. § 271(b), in

performing methods that embody the patented invention as described in Count I, above.

103. Furthermore, as detailed in Count I above, Defendant has instructed its customers to use the accused methods in an infringing manner.

104. Since the filing of the Original Complaint, Zoho has not altered its advertisement or promotion of the infringing features of its products.

105. Since it became aware of the '392 Patent, Zoho has made no effort to modify the accused products in a way that would avoid infringement.

106. Zoho's analysis and knowledge of the '392 Patent combined with its ongoing activity demonstrates Zoho's knowledge and intent that the identified features of its products be used to infringe the '392 Patent.

107. Zoho's knowledge of the '392 Patent and Plaintiff's infringement allegations against Zoho combined with its knowledge of the Accused Products and how they are used to infringe the '392 Patent, consistent with Zoho's promotions and instructions, demonstrate Zoho's specific intent to induce Zoho's users to infringe the '392 Patent.

108. Plaintiff is entitled to recover from Zoho compensation in the form of monetary damages suffered as a result of Zoho's infringement in an amount that cannot be less than a reasonable royalty together with interest and costs as fixed by this Court.

## COUNT III – DIRECT PATENT INFRINGEMENT OF '203 PATENT

109.   Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

110.   Defendant has directly infringed the '203 Patent in violation of 35 U.S.C. § 271(a) by making, using (including its own use and testing), selling, or offering to sell in the United States, or importing into the United States systems and/or products ("Accused Products") that embody the patented invention of claims 34-39.

111.   Defendant's infringing Accused Products include, without limitation, Meeting, Showtime, Cliq, Zoho One, CRM Plus, Workplace and other branded solutions that include the same features or functionality that satisfy each element of one or more asserted claims.

112.   The Accused Products satisfy each and every element of each asserted claim of the '203 Patent, as detailed herein, either literally or under the doctrine of equivalents.

113.   According   to   https://help.zoho.com/portal/kb/articles/introduction-about-zoho-meeting, Defendant's Zoho's Meeting includes features that allow the meeting host to "switch between sharing applications and screens during sessions."

114.   According to https://help.zoho.com/portal/kb/articles/showtime-voice-video-and-screen-share#Can_my_attendees_interact_with_me, Defendant's Zoho's

ShowTime includes features to "share a presentation" with video-conferencing audience members.

115. The Zoho Accused Products include a call manager having an interface program, namely the Zoho Showtime and Meeting downloadable software.

116. According to https://help.zoho.com/portal/kb/articles/start-a-webinar, during a Zoho webinar you can share a specific document (from an application window) with attendees.

117. The Knowledge Base information provided by Zoho at https://help.zoho.com/portal/kb/articles/start-a-webinar, states that a user can share an application window (which allows for the sharing of a document) with attendees.



118.    Zoho's Knowledge Base instructs users how to use Zoho's Showtime application.

119.    Zoho's Knowledge Base includes instructions to "Screen share" at https://help.zoho.com/portal/kb/articles/deliver-a-remote-session-using-showtime-web#Screen_share.

120.    Zoho    provides    instructions    in    its    Knowledge    Base    at https://help.zoho.com/portal/kb/articles/deliver-a-remote-session-using-showtime-web#Screen_share for sharing an application window (e.g. document named analytics.final).

**Screen share**

When you select Screen share on the **Options** page, you will be prompted to select Your entire screen, Application window, or Browser Tab. Select one and click **Share**.

Google Chrome users have to install the extension to use ShowTime's screen share.



Choose what you would like to share: Your Entire Screen, Application Window, or Browser Tab. Select one and click **Share.**

- *Your Entire Screen* - Share your entire screen with attendees.
- *Application Window* - Share a particular application window with attendees. They wil able to view only the application and nothing else on your screen.
- *Browser Tab* - Share a particular browser tab with your attendees.





When you share a screen, your attendees will be able to view the shared screen on their mobile devices or laptops. When the live streaming begins you will see "Screen share is in progress. Your attendees can view the screen that you choose to share." During the process of choosing an application to share, your attendees will see the screen "Trainer is gearing up for the session. Please wait."

**To switch between screens during screen share:**

If you would like to share a different screen with your attendees, click the Screen Share icon. A screen share pop-up will prompt you to choose what you would like to share with your attendees.

**Stop Sharing**

Once you're done, click Stop Sharing. If the session was started with a presentation, you'll be returned to it. If the session was started directly with screen share, when you click Stop Sharing you will be taken back to the Options page to choose a Presentation or Screen share. Your attendees will still be able to hear and see you. You can also still conduct polls and receive the questions attendees pose.

**Exit**

Once the session is completed, click Exit in the bottom-left corner of the screen. You will be prompted if you want to end click End Broadcast to quit the session. Request attendees to provide a rating and feedback when they are prompted.

121. Zoho's Showtime allows the meeting host to share a particular application window with attendees and "[t]hey will be able to view only the application and nothing else on your screen." *See* https://help.zoho.com/portal/kb/articles/deliver-a-remote-session-using-showtime-web#Screen_share.

122. When the Zoho Accused Products are used for their intended purposes they include a plurality of communication devices for electrical communications with the call manager.

123.   The Zoho Knowledge Base (as shown below), demonstrates that the intended purpose and use of Zoho Meeting is as a "web conferencing tool that lets you host webinars and conduct meetings online."



124.   In operation, the Accused Products (as seen in the image below) demonstrates that each of a plurality of communication devices is put into electrical communication with Zoho Meeting and Showtime.



125. Zoho Meeting, for example, includes an interface for receiving calls from (Dial In) the plurality of communication devices. This connectivity is then used for application sharing.



126.    The Zoho Accused Products maintains status information regarding the connectivity of participants including the current number of active participants.

127.    The picture below shows the number of active participants (one) in the upper left corner by the indication "Attendees(1)."



128.   The Zoho Accused Products provide software within the interface program that automatically establishes at least a substantially real-time shared viewing of at least one document between at least one audience member and a host user, wherein the host user only selects the at least one document to be shared and the at least one audience member with whom to share the at least one document to initiate the substantially real-time shared viewing.

129.   After the connections described above have been established, the Host can select the share a presentation or screen share which then reveals a list of application windows as well as documents.   Thereafter, the Host can select the document for sharing.





130. After clicking the share button, the selected document is shared with the other participant on the conference.





131.  The Zoho Accused Products include a list of active participants.



132.  Defendant's infringing activities are and have been without authority or license under the '203 Patent.

133.   Plaintiff is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT IV – INDUCED PATENT INFRINGEMENT OF '203 PATENT

134.   Plaintiff realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

135.   Since the filing of this lawsuit and service of the Original and Amended Complaint, Defendant has actively and intentionally, with prior knowledge of the '203 Patent and Plaintiff's claims of infringement, induced the direct infringement by others of claims 34-39 of the '203 Patent in violation of 35 U.S.C. § 271(b), in making, using, selling, or offering to sell in the United States, or importing into the United States Accused Products embody the patented invention as described in Count III, above.

136.   Furthermore, Defendant has instructed its customers to use the Accused Products in an infringing manner.

137.   Since the filing of this Complaint, Zoho has not altered its advertisement or promotion of the infringing features of its products.

138.   Since it became aware of the '203 Patent, Zoho has made no effort to modify the accused products in a way that would avoid infringement.

139. Zoho's analysis and knowledge of the '203 Patent combined with its ongoing activity demonstrates Zoho's knowledge and intent that the identified features of its products be used to infringe the '203 Patent.

140. Zoho's knowledge of the '203 Patent and Plaintiff's infringement allegations against Zoho combined with its knowledge of the Accused Products and how they are used to infringe the '203 Patent, consistent with Zoho's promotions and instructions, demonstrate Zoho's specific intent to induce Zoho's users to infringe the '203 Patent.

141. Plaintiff is entitled to recover from Zoho compensation in the form of monetary damages suffered as a result of Zoho's infringement in an amount that cannot be less than a reasonable royalty together with interest and costs as fixed by this Court.

## JURY DEMAND

142. Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Fed. R. Civ. P. 38.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

A.  An adjudication that one or more claims of the '392 Patent have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

B.  An adjudication that one or more claims of the '203 Patent have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

C.  An accounting and an award to Plaintiff of damages adequate to compensate Plaintiff for the Defendant's acts of infringement, together with pre-judgment and post-judgment interest and costs pursuant to 35 U.S.C. § 284;

D.  That this Court declare this to be an exceptional case and award Plaintiff its reasonable attorneys' fees and expenses in accordance with 35 U.S.C. § 285; and

E.  Any further relief that this Court deems just and proper.

Respectfully submitted this 16th day of January 2019.

By: */s/ Jennifer Tatum Lee*
    Jennifer Tatum Lee
    State Bar No. 24046950
    jennifer@connorkudlaclee.com
    Kevin S. Kudlac
    State Bar No. 00790089
    kevin@connorkudlaclee.com
    Cabrach J. Connor
    State Bar No. 20436390

cab@connorkudlaclee.com

**CONNOR KUDLAC LEE PLLC**
609 Castle Ridge Road, Suite 450
Austin, Texas 78746
512.777.1254 Telephone
888.387.1134 Facsimile

**ATTORNEYS FOR PLAINTFF**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing document was served on the attorney of record by delivering a true and correct copy through the Court's CM/ECF system per Local Rule CV-5(a)(1) on this the 16th day of January 2019, as follows:

Ryan Marton
Marton Ribera Schumann & Chang LLP
548 Market Street, Suite 36117
San Francisco, CA 94104

Matthew C. Powers
Graves, Dougherty, Hearon & Moody, P.C.
401 Congress Avenue, Suite 2200
Austin, Texas 78701

*/s/ Jennifer Tatum Lee*
Jennifer Tatum Lee
