# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| VISIBLE CONNECTIONS, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:18-CV-859 |
| | § | |
| ZOHO CORPORATION | § | |
| | § | |
| Defendant. | § | |
| | § | |

## ZOHO CORPORATION'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

Defendant Zoho Corporation ("Zoho") respectfully moves to dismiss Plaintiff Visible

Connections, LLC's ("Visible Connections") First Amended Complaint pursuant to Federal Rule

of Civil Procedure 12(b)(6) for failure to state a claim.  Dismissal is warranted because all of the

claims of the asserted patents—U.S. Patent No. 7,284,203 (the "'203 patent") and U.S. Patent

No. 6,665,392 (the "'392 patent")—are directed to patent-ineligible subject matter.

## I.     INTRODUCTION

Neither the '203 patent nor the '392 patent is directed to a technological solution or

advance.  Instead, both are directed to age-old ideas untethered to any technical solution.

The '203 patent is directed a technologically agnostic method for shared viewing of a

document wherein the user first selects the document to be shared and then selects the person(s)

with whom the selected documents will be shared.  The claims are not directed to a specific

way of achieving this.  Instead, the claims amount to nothing more than the age-old human

process of picking a document to show to someone and then picking the person to show it to.

This is not patent-eligible, and nothing in the claims brings it within the ambit of patentable

subject matter.  The claims do not recite new technology.  They do not recite specific

algorithms or data structures that would improve the operation of existing technology—indeed,

they recite no algorithms or data structures at all.  Instead, the claims implement the abstract

idea of selecting a document to be shared and selecting someone to share it with using well-

known, generic technological components such as computer systems, operating systems, off-

the-shelf conferencing systems, and communication devices.  As the Federal Circuit has

consistently found, "standard components" like these "are not sufficient to transform abstract

claims into patent-eligible subject matter."  *See*, *e.g.*, *VoterVerified, Inc. v. Election Sys. &*

*Software LLC*, 887 F.3d 1376, 1386 (Fed. Cir. 2018).

Similarly, the '392 patent does not claim a patentable technological advance.  Instead, it

is directed to a method for generation of an ID number to identify the user of a conference call

system so that he/she can be provided with a web page that delivers unspecified information about the conference call.  At its core, the '392 patent is directed to nothing more than the issuance of a number to identify a participant in a communication.  Like issuing a number to a participant in an auction, this is an age-old notion that cannot be patented.  Doing this in the context of telephones and the internet does not change this.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 222-23 (2014) (citing *Bilski v. Kappos*, 561 U.S. 593, 611, 619 (2010)) ("limiting the use of an abstract idea to a particular technological environment" does not "transform a patent-ineligible abstract idea into a patent-eligible invention") (internal citation and quotation omitted).

The issue of patent eligibility should be resolved at the initial pleading stage.  Indeed, claims that are "plainly directed to a patent ineligible abstract idea," like the claims at issue here, should be invalidated "on the pleadings." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1365 (Fed. Cir. 2015) (Mayer, J., concurring), *cert. denied*, 136 S. Ct. 701 (2015). Doing so "not only conserves scarce judicial resources and spares litigants the staggering costs associated with discovery[,] . . . it also works to stem the tide of vexatious suits brought by the owners of vague and overbroad . . . patents." *Id.* at 1364.

## II.    LEGAL STANDARDS

Whether a claim is drawn to patent-eligible subject matter under § 101 is a "threshold inquiry" and "an issue of law." *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593, 602 (2010) (describing § 101 as "a threshold test"); *Parker v. Flook*, 437 U.S. 584, 593 (1978) (noting that an inquiry under § 101 "must precede the determination of whether [a] discovery is, in fact, new or obvious"); *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000) ("Whether a claim is drawn to patent-eligible subject matter is an issue of law[.]").  The Federal Circuit has confirmed that deciding patent eligibility under § 101 is appropriate at the pleading stage.  *See*, *e.g.*, *Content Extraction & Transmission LLC v. Wells*

3

*Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (affirming motion to dismiss on § 101 grounds); *Ultramercial, Inc. v, Hulu, LLC*, 772 F.3d 709, 711 (Fed. Cir. 2014) (same); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (affirming Rule 12(c) finding of ineligibility); *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1349 (Fed. Cir. 2015) (affirming Rule 12(b)(6) finding of ineligibility); *OIP Techs., Inc.*, 788 F.3d 1359 (Fed. Cir. 2015) (same).  Indeed, Judge Mayer at the Federal Circuit has declared that eligibility under § 101 "is the primal inquiry, one that must be addressed at the outset of litigation." *Ultramercial, Inc.*, 772 F.3d at 718.  This declaration is rooted in sound policy. Addressing § 101 at the outset of litigation "conserve[s] scarce judicial resources," "provides a bulwark against vexatious infringement suits," and protects the public at the outset from "patents that stifle innovation and transgress the public domain." *Id*. at 719-20.

Claim construction is not required before determining questions of patent ineligibility. *See Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012); *Bilski*, 561 U.S. at 611-13 (finding patent ineligible under § 101 without claim construction).  This is particularly true when, as here, the basic character of the claims can be readily understood.  *Clear with Computers, LLC v. Altec Indus.*, 2015 WL 993392, at*3 (E.D. Tex. Mar. 3, 2015); *see also Intellectual Ventures I, LLC v. Erie Indemn. Co*., Nos. 1:45-cv-00220, 2:14-cv-01130, 2015 WL 5686643, at *22 (W.D. Pa. Sept. 25, 2015).  Furthermore, "[a] court may also take judicial notice of the prosecution histories, which are 'public records.'" *Genetic Techs. Ltd. v. Bristol-Myers Squibb Co.*, 72 F. Supp. 3d 521, 526 (D. Del. 2014), *aff'd sub nom. Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369 (Fed. Cir. 2016) (quoting *Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000)).

The Supreme Court has established a two-step analytical framework for distinguishing patents that claim patent-ineligible laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217 (citing

3438412.v1

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012)).  First, the Court must determine whether the claims at issue are directed to a patent-ineligible abstract idea.  *Id.* (citing *Mayo*, 566 U.S. at 77-78).  Abstract ideas may include a "fundamental economic practice long prevalent in our system of commerce," a "longstanding commercial practice," or "a method of organizing human activity," even if the claim is not addressed to a mathematical formula or law of nature.  *Alice*, 573 U.S. at 220 (citing *Bilski*, 561 U.S. at 611, 619).

Second, if the claims at issue are directed to an abstract idea, "the court then considers the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application of that abstract idea."  *Id.* (quoting *Mayo*, at 566 U.S. at 78-79).  The court must determine whether there is something else in the claims—an "inventive concept"—"sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself."  *Alice*, 573 U.S. at 217.  The second step asks whether the "additional features" of the claim ensure that it "is more than a drafting effort designed to monopolize the [abstract idea.]."  *Id.*, 573 U.S. at 221 (citing *Mayo*, 566 U.S. at 77).  In discussing the second step, the Supreme Court instructs that adding "well-understood, routine, conventional activities previously known to the industry," limiting an idea to a particular field of use or a particular technological environment, adding data-gathering steps, and adding any other token pre-, post- or extra-solution activity, are not inventive concepts.  *Id.* at 221-24.

This inquiry under § 101 turns on the subject matter of the claims, not on claim drafting.  *See Alice*, 573 U.S. at 226 (explaining that the "Court has 'longwarn[ed] . . . against interpreting § 101 in ways that make patent eligibility depend simply on the draftsman's art'" (citation omitted)).  For this reason, a movant may challenge eligibility through representative claims and without engaging in a repetitive attack on each claim individually.  *See Content Extraction & Transmission LLC,* 776 F.3d at 1348 (finding that the district court "correctly determined that

addressing each claim of the asserted patents was unnecessary" because "all the claims are 'substantially similar and linked to the same abstract idea'" (citation omitted)).

## III.    ARGUMENT

### A.    The '203 Claims Are Ineligible For Patenting.

As noted above, the '203 patent describes software defined only by its functionality, namely, software (referred to as an "interface program") that reduces document (*i.e.*, application) sharing to a two-step process: selecting one or more documents for sharing and then selecting one or more people with whom to share the documents.  The patent explains:

> [T]his interface program allows application sharing to be …
> established by selecting one or more documents to be shared and
> one or more participants with whom to share such one or more
> documents. After which, connectivity and any associated activity is
> automatically initiated.

'203 Patent at 4:30-35.  The patent reflects this basic two-step process in Figure 3:



Figure 3.

The patent does not limit how this basic two-step process is implemented.  It does not describe any novel software, hardware of special combination of known things.  Instead, it describes the purported invention being implemented using conventional (known) computers, with conventional operating systems, using known off-the-shelf conferencing programs (*e.g.*, NetMeeting and ProShare) and known telecommunication technology.  '203 Patent at 1:14-38 (describing in the background section that conventional computer systems of the time often

6

included application programs that allow contemporaneous sharing of electronic media such as documents and "conventionally" have conferencing capability that enable "substantially real time" shared viewing of applications and documents); *see also id*. at 3:25-46 (explaining that the "invention" can be implemented using "well-know[n]" computer configurations); *id*. at 3:60-64 (explaining that a "variety of operating systems, application programs and conferencing programs may be used"); *id*. at 4:5-28 (same); *id*. at 11:51-55 (explaining that the "call manager" used in the "invention" is "well known in telecommunications").

The patent then explains that although embodiments have been described in the specification, it would be "readily apparent" to those of skill in the art "that various structural, logical, electrical, and other changes in form and detail may be made to these embodiments without departing from the scope of the present invention as set forth in the appended claims" and that the invention is "defined only by the appended claims that follow this detailed description." *Id*. at 11:66-12:6.

The claims of the patent-in-suit—like the specification—are also broad and untethered to a specific technological solution.  Claim 1, which is representative of many of the claims, demonstrates the breadth of this patent[1]:

> A **method of application sharing** between a host user and at least one audience member, comprising:
>
> **selecting at least one document** to be shared by the host user;
>
> **selecting the at least one audience member** with whom to share the at least one document; and

---

[1] While Visible Connections' First Amended Complaint only maps claims 34-39 of the '203 patent to accused technology, it seeks a generalized finding of infringement of the '203 patent (*see* First Amended Complaint, Prayer For Relief) and in some instances makes generalized assertions of infringement of the '203 patent as a whole (*see* First Amended Complaint, ¶¶ 139-140).  In correspondence with Zoho's counsel, Visible Connections' stated that it is not asserting claims 1 and 7 of the '203 patent but at the same time it refuses to grant Zoho a license or covenant not to sue on those claims or any of the other claims not mapped in the First Amended Complaint.  Thus, Zoho seeks to invalidate every claim of the '203 patent at this time.

3438412.v1

> **automatically establishing a substantially real-time shared viewing of the at least one document** between the at least one audience member and the host user.

*Id*. at 12:10-18.  This method is not limited to a computer implementation.  It merely requires (1) selection of a document to be shared; (2) selection of a person with whom the selected document is to be shared; and (3) and sharing of the document.  As such, it is directed to nothing more than the notion of selecting something to share, selecting a person to share it with and then sharing— like a parent selecting a book to read to one of his/her children or a teacher sharing material with a portion of his/her class.

While other claims include recitations of addition technical components, all such components are unquestionably conventional.  *See*, *e.g.*, claim 7 (including conventional "computer," "operating system," "conferencing program," and "application program" all used with in "interface program" for performing the basic two-step method described above); claim 8 (same); claim 9 (including "status indicator" on a graphical user interface for showing the "connection status" between two standard computers engaged in document/application sharing); claim 14 (including a computer with a "windowing operating system"); claim 17 (same); claim 18 (including "programmed computer system" that includes "pop-up" menus that list the participants and documents to be selected per the two-step process discussed above); claim 20 (including conventional computer "window tiles" that can be shared in the two-step process discussed above); claim 26 (including a "programmed computer system" for application sharing); claim 34 (including a conventional "call manager" used for document/application sharing); claims 35-39 (same).

Stripped of the conventional technology all of the '203 patent claims amount to nothing more than abstract notions of the two-step document sharing process coupled with simple additional elements like maintaining status of who is participating in the sharing.  For example,

3438412.v1

as reflected in the below chart, despite containing many words, claim 7 is nothing more than the two-step process reflected in claim 1:

| Claim 7 | Claim 7 without conventional technological components |
|---|---|
| A **method of application** sharing between a host user and a participant, comprising: | Method for sharing documents including the following steps: |
| providing a first computer system having a first operating system, a first conferencing program and an interface program; | Selecting a document |
| providing a document and an application program associated with the document on the first computer system; | |
| providing a second computer system having a second operating system and a second conferencing program; | |
| providing a communication link operatively coupling the first computer system to the second computer system; | |
| **selecting** by the host user **the document**; | |
| **selecting** by the host user the **participant**; and | Selecting a participant to share the document with |
| automatically establishing a substantially real-time **shared viewing of the document** on the first computer system and the second computer system using the interface program. | Shared viewing of the document. |

When the "computer systems," "conferencing program," and the "application program" which the patent admits are conventional are removed from the claim, all that remains is a method wherein a document is selected, a person is selected and the selected document is shared with the selected person.  Similarly, claim 34—when stripped of conventional technical components— constitutes nothing more than document sharing where a list of current folks with whom the document is being shared is kept:

| Claim 34 | Claim 34 without conventional technological components |
|---|---|
| A system for **application sharing**, comprising: | Sharing documents |
| a call manager, the call manager having an interface program; | |
| a plurality of communication devices for electrical communication with the call manager; | |
| the call manager configured to manage calls to and from the plurality of communication devices for establishing connectivity for the application sharing; and | |
| the interface program in cooperation with the call manager configured to **maintain status information** regarding the connectivity, the status information **including current number of active participants.** | Keep a list of those who the documents are being shared with |

This claim has a call manager (which the patent admits is well known conventional technology (*see* '203 patent at 11:50-55)) that manages connectivity between devices (conventional computers) and an interface program that tracks the number of active participants in the application (*i.e.*, document) sharing.  This is nothing more than software, implemented in any way, that keeps track of the participants.

            **1.**        **Step One: The '203 Patent Is Directed To An Abstract Idea.**

As discussed above, "a claim is directed to an abstract idea when it describes a fundamental concept or longstanding practice." *Morales v. Square, Inc.,* 75 F. Supp. 3d 716, 724 (W.D. Tex. 2014).  "In determining whether a claim is directed to an abstract idea, courts look past the claim language to 'the purpose of the claim—in other words, what the invention is trying to achieve.'" *Id.* (quoting *Cal. Inst. of Tech. v. Hughes Communications Inc.*, 59 F. Supp.3 d 974, 991 (C.D. Cal. 2014)); *see also Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 56 F. Supp. 3d

813, 820 (E.D. Va. 2014) (analyzing a claim "[o]n its face and looking past the mere claim language"); *Alice*, 573 U.S. at 2356 (finding that a claim reciting a specific, multiple-step process was drawn to the abstract concept of mitigating settlement risk using a third party).  Step one is a "quick look" test, wherein courts "recite [the] claim's purpose at a reasonably high level of generality."  *Affinity Labs of Texas, LLC v. Amazon.Com, Inc.*, 6:15-CV-0029-WSS-JCM, 2015 WL 3757497, at *6 (W.D. Tex. June 12, 2015), *report & rec. adopted*, W-15-CV-029, 2015 WL 11622489 (W.D. Tex. Sept. 23, 2015).  "All of the claim limitations need not be abstract.  The patent may not pass § 101 muster 'if the concept embodied by the majority of the limitations' describe an abstract idea." *Id.* (quoting *Ultramercial*, 772 F.3d at 715).

Here, the claims of the '203 patent are directed to the fundamental, abstract idea of sharing: select something to share and select someone with whom to share it.  As discussed above, claim 1 amounts to nothing more than this two-step process.  The other claims in the patent add nothing more than conventional computing technology and notions of maintaining a list of participants and status of sharing.

It is well-established that the inclusion of computer elements, like a "computer system," "operating system," communication link," "a graphical user interface," "application programs," "conferencing programs," and "call managers" does not transform the claims into patentable subject matter.  These conventional implementation components do not make the asserted claims any less abstract.  Instead, they "merely provide a generic environment in which to carry out the abstract idea."  *In re TLI Commc'ns LLC Patent Litigation,* 823 F.3d 607, 611 (Fed. Cir. 2016); *see also Content Extraction and Transmission LLC,* 776 F.3d at 1347 (claims held to be drawn to basic concept of data recognition and storage despite tangible claim element of scanner).  The Federal Circuit reaffirmed this dispositive conclusion in *Intellectual Ventures I LLC v. Symantec Corp. et al*., No. 2015-1769, 2016 WL 5539870, at *4 (Fed. Cir. Sept. 30, 2016), observing that"[c]laims that amount to nothing significantly more than an instruction to apply [an] abstract

3438412.v1

idea . . . using some unspecified, generic computer and in which each step does no more than require a generic computer to perform generic computer functions do not make an abstract idea patent-eligible . . . ." (internal citations omitted).  Those words could have been written for this case.  Indeed, the patent itself concedes that these generic computer components are, in fact, generic.  *See*, *e.g.,* '203 patent at 1:14-38 (describing in the background section that conventional computer systems of the time often included application programs that allow contemporaneous sharing of electronic media such as documents and "conventionally" have conferencing capability that enable "substantially real time" shared viewing of applications and documents); *see also id*. at 3:25-46 (explaining that the "invention" can be implemented using "well-know[n]" computer configurations); *id*. at 3:60-64 (explaining that a "variety of operating systems, application programs and conferencing programs may be used"; *id*. at 4:5-28 (same); *id*. at 11:51-55 (explaining that the "call manager" used in the "invention" is "well known in telecommunications").

Moreover, as the Federal Circuit and other courts have confirmed, the asserted claims of the '203 patent are abstract because they can be "performed by human beings in a non-computerized . . . context."  *Intellectual Ventures I LLC v. Symantec Corp.*, *C.A.*, 100 F. Supp. 3d 371, 383 (D. Del. 2015), *aff'd in part, rev'd in part on other grounds*, 838 F.3d 1307 (Fed. Cir. 2016) (citing *buySAFE,* 765 F.3d at 1353).; *Adrea, LLC v. Barnes & Noble, Inc.,* No. 13-CV-4137 JSR, 2015 WL 4610465, at *5 (S.D.N.Y. July 24, 2015) (granting motion for judgment of invalidity under § 101 where the "patent claims merely recite, in broad and generic terms, steps that are equivalent to those one could take in the physical world").  The claims in the '203 patent recite basic steps done by people since the beginning of the written word: select a document to share, select a person with whom to share it, and share it.

Another telltale sign that the patent is directed to an ineligible abstract idea is the fact that the claims can be implemented in a countless number of ways.  *See Mayo Collaborative Servs. v.*

12

*Prometheus Labs.*, 566 U.S. 66, 88 (2012) ("[T]he underlying functional concern here is a relative one:  how much future innovation is foreclosed relative to the contribution of the inventor."); *Loyalty Conversion Sys. Corp. v. American Airlines, Inc.*, 66 F. Supp. 3d 829, 843 (E.D. Tex. 2014) (invaliding claims that were "largely functional in nature" and "do not provide any significant description of the particular means by which the various recited functions are performed" because such claims "have the potential to foreclose future innovation disproportionately relative to the contribution of the inventor.").  Here, neither the patent nor the claims limit how the claims are to be implemented.

Finally, it is also a telltale sign that "[t]he specification fails to provide any technical details for the tangible components, [and] instead predominately describes the system and methods in purely functional terms."  *In re TLI Commc'ns LLC Patent Litigation,* 823 F.3d at 612.  Here, as explained above, the claims are described by functionality not specific implementations.  Indeed, neither the patent nor claims recite specific algorithms or data structures—indeed they recite no algorithms or data structures at all.

Accordingly, the '203 patent claims an abstract idea—and as such improperly attempts to monopolize a well-known, and fundamental human process: *sharing*.  The '203 patent claims are "nothing significantly more than an instruction to apply the abstract idea"—selecting a document for sharing and a person to share it with—"using . . . a generic computer to perform generic computer functions." *Alice*, 573 U.S. at 225-26.

> 2.     **Step 2:  The Claims Of The '203 Patent Lack An "Inventive Concept" Sufficient To "Transform" The Abstract Idea Into A Patent-Eligible Subject Matter.**

"A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'"  *Alice*, 573 U.S. at 221 (quoting *Mayo*, 566 U.S. 77).  Here, the '203 patent claims fail *Alice*'s step two because the claim elements do not disclose additional features, or an inventive concept sufficient

to transform the abstract idea into a patent-eligible application of that idea. *Alice,* 573 U.S. at 221-22. All the elements were well-understood, routine and conventional, and "it is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea." *TLI Commc'ns,* 823 F.3d at 613. Rather, "the components must involve more than performance of well-understood, routine, conventional activities previously known to the industry." *Id.*, citing *Alice*, 573 U.S. at 225 (quotation punctuation omitted).

As explained above, none of the '203 patent claims contain anything more than conventional components, the two-step notion of document sharing and maintenance of status information related to the sharing. The patent describes this purported invention as being implemented using conventional computers, with conventional operating systems, using known conferencing programs (*e.g.*, NetMeeting and ProShare) and known telecommunication technology. '203 Patent at 1:14-38 (describing in the background section that conventional computer systems of the time often included application programs that allow contemporaneous sharing of electronic media such as documents and "conventionally" have conferencing capability that enable "substantially real time" shared viewing of applications and documents); *see also id.* at 3:25-46 (explaining that the "invention" can be implemented using "well-know[n]" computer configurations); *id.* at 3:60-64 (explaining that a "variety of operating systems, application programs and conferencing programs may be used"; *id.* at 4:5-28 (same); *id.* at 11:51-55 (explaining that the "call manager" used in the "invention" is "well known in telecommunications"). None of these conventional components provide an inventive concept. *See Alice,* 573 U.S. at 223 ("the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention"); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1320 (Fed. Cir. 2016) (claim for routing emails that featured generic processing equipment held non-inventive); *TLI Commc'ns*, 823 F.3d at 614 (computer components carrying out "well-understood, routine, activities previously known to the industry"

14

held not patentable) (brackets omitted); *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 109 F. Supp. 3d 916, 942 (W.D. Tex. 2015) ("Likewise, this Court finds that the "graphical user interface" is a generic computer component."); *Smart Sys. Innovations, LLC*, No. 14 C 08053, 2015 WL 4184486, at *5 (N.D. Ill. July 10, 2015) ("[i]nvoking 'various computer hardware elements,' which save time by carrying out a validation function on site rather than remotely, does not change the fact that 'in substance,' the claims are still "directed to nothing more than" running a bankcard sale—that is, 'the performance of an abstract business practice.'").

Thus, the claims of the '203 patent comprise well-understood, routine and conventional computer functionality previously known to the industry and therefore provide no inventive concept. That the claims seek to limit themselves to particular technological environments is of no moment. *See, e.g., Ultramercial*, 772 F.3d at 712; *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1264 (Fed. Cir. 2016) ("recitation of generic computer limitations does not make an otherwise ineligible claim patent-eligible"), citing *Mortgage Grader, Inc. v. First Choice Loan Services, Inc.*, 811 F.3d 1314 (Fed. Circ. 2016). When these generic, conventional components are removed from the claims, all that is left is activity equivalent to the longstanding practice of sharing and keeping track of who have been shared with.

## B.       The Claims Of The '392 Patent Are Ineligible For Patenting.

The '392 patent, like the '203 patent, is directed to a basic notion in human interaction: generation of a number to identify a participant in a communication. The patent proposes use of this basic process in the context of conference call systems wherein the user of the system might want to use his telephone for the conference call but also receive information related to the conference call (like participant status information) over the Internet. The patent acknowledges in the background section that such operational associations between a user's computer and a conference call system, and a user's telephone line and a conference call system are not new innovations. '392 patent 1:25-58. But the patent asserts known systems for creating such

associations are limited by requirements to preregister "with a unique ID (identification)":

> When participants dial in to the conference bridge, they must not only enter their conference codes but must also enter their unique personal IDs, using the same personal ID when connecting to the system from a computer over the data network. Unregistered participants cannot be identified. Drawbacks to this approach are that participants must be pre-registered to enjoy the full benefits of the user interface and must also remember their personal identification numbers.

*Id*. at 1:51-58.  The patent purports to overcome this pre-registration limitation by providing the following method:

> (1) generating a unique temporary code when a data connection is established between the participant and said conference call system; (2) displaying the code over the data connection to the participant on that participant's computer screen; and (3) instructing the participant to enter the code over his telephone connection to the conference call system.

*Id*. at 2:39-45.  This is the entire "invention": generation of a code that is provided to the user along with instruction to enter the code on his telephone.  Claim 1, the only independent claim in the patent provides:

> **A method of** operationally **associating a participant's telephone connection** to a conference call system **with a data connection from said participant's computer screen to said conference call system**, said conference call system establishing voice connections between itself and multiple conference call participants, said method **comprising the steps of**:
>
> **generating a unique temporary code when a data connection is established between said participant and said conference call system**;
>
> **displaying said** code over said data connection to said participant on that participant's computer screen; and
>
> **instructing said participant to enter said code over his telephone** connection to the conference call system.

'392 patent at 8:18-31.  There is no technology here.  Instead, after stripping away the conventional technical elements (*i.e.*, telephones, data connections, computers and conference

16

call systems) the claim is directed to generation of a code that can be used to identify a person. That's it. The patent specification adds little technical detail to the abstract idea claimed apart from conventional computer hardware and software components and conventional use thereof. It does not specify particular hardware or architecture. It does not require a particular algorithm or implementation. It does not specify a format or type of software or hardware that the system works with. It does not discuss any algorithms that could perform the claimed step of "generating." In fact, the specification does not provide any technological implementation details that limit the functional breadth of the claims. Nor does the specification purport to improve the functioning of pre-existing computer systems.

### 1.    Step 1: The '392 Patent Is Directed To An Abstract Idea.

The '392 patent claims are directed to the fundamental concept of providing a number to identify a communication participant and as such are directed to an abstract idea. *Morales,* 75 F.Supp.3d at 724 (W.D. Tex. 2014) ("a claim is directed to an abstract idea when it describes a fundamental concept or longstanding practice."). The only independent claim, claim 1, recites nothing more than providing a conference call user with a code that he can use to be identified. Stripped of conventional technical elements, this is something that can be "performed by human beings in a non-computerized context." *Intellectual Ventures I LLC,* 100 F. Supp. 3d at 383 ; *Adrea, LLC v. Barnes & Noble, Inc.,* 2015 WL 4610465 at *5 (granting motion for judgment of invalidity under § 101 where the "patent claims merely recite, in broad and generic terms, steps that are equivalent to those one could take in the physical world"). For example, an auction administrator can provide participants with a number written on a paddle to be held up when the participant wishes to place a bid.

In addition, the '392 patent claims can be implemented in a countless number of ways. *See Mayo,* 566 U.S. at 88 ("[T]he underlying functional concern here is a relative one:  how much future innovation is foreclosed relative to the contribution of the inventor."); *Loyalty*

3438412.v1

*Conversion,* 66 F. Supp. 3d at 843 (invaliding claims that were "largely functional in nature" and "do not provide any significant description of the particular means by which the various recited functions are performed" because such claims "have the potential to foreclose future innovation disproportionately relative to the contribution of the inventor."). The patent does not specify how the ID code is generated, how it is displayed to a user or how the "operational association" is achieved. "The specification fails to provide any technical details for the tangible components, [and] instead predominately describes the system and methods in purely functional terms." *TLI Commc'ns,* 823 F.3d at 612. Accordingly, the '392 patent claims an abstract idea.

**2.      Step Two: The Claims Of The '392 Patent Lack An "Inventive Concept" Sufficient To "Transform" The Abstract Idea Into A Patent-Eligible Subject Matter.**

None of the '392 patent claims include additional features that would constitute an inventive concept and as such the claims are ineligible for patenting. *Alice*, 573 U.S. at 221 ("A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'"). Instead*, all the elements were well-understood, routine and conventional. As the background section of the '392 patent admits, each technical component listed in the claims (*e.g.*, a telephone, conference call system, data connections, and operational associations) all existed before the patent was applied for. There is no new technology here—there is no inventive concept. *See Alice*, 573 U.S. at 223 ("the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention"); *Intellectual Ventures I,* 838 F.3d at 1320 (finding claim directed to routing emails that featured generic processing equipment to be non-inventive); *TLI Commc'ns*, 823 F.3d at 614 (finding computer components carrying out "well-understood, routine, activities previously known to the industry" are not patentable) (brackets omitted); *Smart Sys. Innovations, LLC*, 2015 WL 4184486, at *5 ("[i]nvoking 'various computer hardware elements,' which save time by carrying out a validation function on site rather than remotely, does not change the fact

18

that 'in substance,' the claims are still "directed to nothing more than" running a bankcard sale—
that is, 'the performance of an abstract business practice.'").  When these generic, conventional
components are removed from the claims, all that is left is activity equivalent to the longstanding
practice of providing a communication participant with an identification number.  As such, these
claims are patent ineligible.

### C.    Dismissal Is Appropriate At This Stage.

Although the Federal Circuit has stated that "whether a claim recites patent eligible subject
matter is a question of law which may contain disputes over underlying facts," this is not such a
case. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) (noting that "[p]atent
eligibility has in many cases been resolved on motions to dismiss or summary judgment" and
that "[n]othing in this decision should be viewed as casting doubt on the propriety of those
cases").  The language of the claims from the asserted patents is straightforward, and Visible
Connections cannot plausibly argue that basic computer terminology like contained therein
requires claim construction before this Court can address the present motion.[2]  Indeed, the
specifications would not support such an argument.  Nor do the specifications or Visible
Connections' complaint support an argument that any of the steps of the asserted patent's claims
are non-conventional, or somehow supply an inventive concept.  Rather, as set forth above, and
as made clear by comparison with the cases cited herein, the asserted patents are precisely the
type of patent whose validity under § 101 can (and should) be decided at the initial pleadings
stage of litigation.  Claims that are "plainly directed to a patent ineligible abstract idea," like the
claims at issue here, should be invalidated "on the pleadings." *OIP Techs., Inc.,* 788 F.3d at
1365.  Doing so "not only conserves scarce judicial resources and spares litigants the staggering

---

[2] This Court has noted that "claim construction is not an inviolable prerequisite to a validity
determination under § 101." *Network Apparel Grp., LP v. Airwave Networks Inc.*, 2016 WL
4718428, at *4 (W.D. Tex. Mar. 30, 2016) (internal quotation marks omitted).

3438412.v1

costs associated with discovery[,] . . . it also works to stem the tide of vexatious suits brought by the owners of vague and overbroad . . . patents." *Id.* at 1364.

## IV.     CONCLUSION

*Alice* and its progeny make clear that the asserted patents are ineligible for patent protection.  The Court should therefore dismiss this action.

Respectfully submitted,

Ryan Marton (admitted *pro hac vice*)
MARTON RIBERA SCHUMANN & CHANG LLP
548 Market Street, Suite 36117
San Francisco, CA 94104
Telephone:     (415) 360-2511
Email:          ryan@martonribera.com

Mathew C. Powers (SBN 24046650)
Graves, Dougherty, Hearon & Moody, P.C.
401 Congress Avenue, Suite 2200
Austin, Texas 78701
(512) 480-5725 Telephone
(512) 536-9938 Telecopier
mpowers@gdhm.com

By:        */s/ Ryan J. Marton*
            Matthew C. Powers

ATTORNEYS FOR DEFENDANT ZOHO CORPORATION

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing is being served on the counsel of record via the CM/ECF system on this 30th day of January, 2019.


By:      */s/ Ryan J. Marton*
       Ryan J. Marton

3438412.v1