IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| VISIBLE CONNECTIONS, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:18-CV-859-RP |
| ZOHO CORPORATION, | § § § | |
| Defendant. | § | |

**ORDER**

Before the Court is Defendant Zoho Corporation's ("Zoho") motion to dismiss, (Dkt. 15), along with responsive briefing, (Dkts. 16, 18). At the parties' request, the Court heard argument on the motion on April 25, 2019, (*see* Dkt. 33), after which the parties filed supplemental briefing, (Dkts. 34, 35). Having considered the parties' briefs and arguments, the record, and the relevant law, the Court finds that the motion should be denied.

**I. BACKGROUND**

This is a patent infringement suit concerning teleconferencing and application sharing. (Am. Compl., Dkt. 14, at 4–16). Plaintiff Visible Connections, LLC ("Visible") alleges that Zoho has infringed two patents: U.S. Patent No. 6,665,392 (the "'392 Patent") and 7,284,203 (the "'203 Patent"). (*Id.*). The '392 Patent describes a method for operationally associating a conference call participant's telephone connection to a conference call system with a data connection via the internet. (*Id.* at 5–6). According to Visible, the '392 Patent improves upon prior art by allowing participants to establish this connection without pre-registering and without requiring the host to send each participant a unique access code. (*Id.* at 7–9).

The '203 Patent, meanwhile, describes a method for real-time application sharing. (*Id.* at 13). According to Visible, the '203 Patent improves on prior art by allowing sharing without preexisting

1

knowledge of associated conferencing programs and by providing data about participants to the host. (*Id.* at 13–14).

Zoho is a company that provides conferencing software to businesses. (*Id.* at 17). Visible alleges that Zoho's software infringes both patents, both directly and indirectly. (*Id.* at 25–45). Zoho now asks the Court to dismiss all of Visible's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the '392 and '203 Patents are invalid under 35 U.S.C. § 101 for failing to claim patentable subject matter. (Mot. Dismiss, Dkt. 15, at 2).

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the

complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

Whether a claim is drawn to patent-eligible subject matter under Section 101 is a "threshold inquiry." *In re Bilski*, 545 F.3d 943, 950–51 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010). If a claim is not drawn to patent-eligible subject matter, it "must be rejected even if it meets all the other legal requirements of patentability." *Id.* Section 101 allows inventors to obtain patents on "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. However, "this provision contains an important implicit exception:" an inventor may not patent laws of nature, natural phenomena, or abstract ideas. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). Zoho argues that Visible's patents are patent-ineligible because they are directed to abstract ideas. (*See, e.g.*, Mot. Dismiss, Dkt. 15, at 2–3).

To determine whether a patent claim violates this exception to the terms of § 101, the Supreme Court has set forth a two-step framework in which a court determines: (1) whether the claim is "directed to a patent-ineligible concept"—a law of nature, natural phenomenon, or abstract

3

idea—and, if so, (2) whether the elements of the claim, considered "both individually and 'as an ordered combination,'" add enough to "'transform the nature of the claim' into a patent-eligible application." *Alice Corp.*, 573 U.S. at 217 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78 (2012)). In the context of an abstract-idea challenge to a patent claim, as here, those two steps are typically understood as the "abstract idea" step and the "inventive concept" step. *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018) (citing *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257–58 (Fed. Cir. 2016)).

Although patent eligibility under Section 101 is "ultimately a question of law," it "may contain underlying issues of fact." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). Accordingly, patent eligibility can be determined at the Rule 12(b)(6) stage, but only when "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). Because a "patent is presumed valid, . . . the burden of establishing invalidity of a claim rests on the party asserting invalidity by clear and convincing evidence." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1364 (Fed. Cir. 2018) (citing 35 U.S.C. § 282; *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011)).

The parties disagree vigorously about whether Visible's patents fail step one of the *Alice* inquiry, based both on the nature of the claims themselves and on the synthesis and application of Federal Circuit precedent. (Mot. Dismiss, Dkt. 15, at 10–13, 17–18; Resp. Mot. Dismiss, Dkt. 16, at 9–11, 17). The Court need not resolve this dispute now, because even if each patent is directed to an abstract concept, Zoho has not met its burden at this stage of the litigation to establish that the patents fail under *Alice* step two.

In step two, a court must ascertain whether a patent contains "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a

patent upon the ineligible concept itself." *Alice Corp.*, 573 U.S. at 217–18 (cleaned up). This requires more than simply "stating the abstract idea while adding the words 'apply it,'" *id.* at 221 (cleaned up), or "apply it with a computer," *id.* at 223. A patent satisfies the second step of the *Alice* inquiry "when the claim limitations involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Aatrix*, 882 F.3d at 1128.

Visible alleges that both patents contain limitations that were not well-understood, routine, or conventional activities previously known to the industry. (Am. Compl., Dkt. 14, at 13, 16). For example, Claim 5 of the '392 describes a method for associating a conference-call participant's telephone and data connection. (*Id.* at 12). The steps for doing so include:

> establishing a data connection between said participant's computer screen and the conference system;
> receiving a conference access code from said participant for a specific conference call;
> generating a PIN (personal identification number) code unique to the specific conference;
> sending said PIN code over said participant's data connection to said participant's computer;
> displaying dialing instructions on said participant's computer screen explaining to said participant how to enter the conference;
> dialing into the conference call according to said displayed dialing instructions;
> establishing operational association between said first participant's data and telephone connections; and
> displaying a conference control web page specific to said participant and said participant's telephone connection.

('392 Patent, Dkt. 14-1, at 8:42–62). According to Visible, this method recites limitations "operating in an unconventional manner" that improve authentication and operational association of the phone and data connection by making the login process more flexible. (Am. Compl., Dkt. 14, at 12).

Meanwhile, Claim 34 of the '203 Patent recites a system for application sharing comprising:

> a call manager, the call manager having an interface program;
> a plurality of communications devices for electrical communication with the call manager;
> the call manager configured to manage calls to and from the plurality of communication devices for establishing connectivity for the application sharing; and
> the interface program in cooperation with the call manager configured to maintain status information regarding the connectivity, the status information including the number of active participants.

('203 Patent, Dkt. 14-2, at 16:45–47). Claim 35 recites:

5

> The system of Claim 34, wherein the interface program automatically establishes at least a substantially real-time shared viewing of at least one document between at least one audience member and a host user, wherein the host user only selects the at least one document to be shared and the at least audience member with whom to share the at least one document to initiate the substantially real-time shared viewing.

(*Id.* at 16:58–65). According to Visible, then-existing systems "lacked real-time shared viewing and user status information," and the '203 Patent improves upon those systems by "allow[ing] the users to share documents (as opposed to application windows) and view status information regarding connectivity and a current number of active participants." (Am. Compl., Dkt. 14, at 16).

Zoho points out that neither patent contains more than "conventional components." (Mot. Dismiss, Dkt. 15, at 14). The '203 Patent, it argues, claims only "the two-step notion of document sharing and maintenance of status information related to the sharing," implemented not using novel means but rather conventional computers, operating systems, conferencing programs, and telecommunications technology. (*Id.*). Similarly, Zoho argues that the '392 Patent claims nothing more than "the longstanding practice of providing a communication participant with an identification number," implemented not using novel means but rather conventional technology—a telephone, conference call system, and data connections—that existed before the patent application. (*Id.* at 18–19). At bottom, Zoho views the two patents as claiming an abstract idea and adding the words "apply it with a computer." *Alice Corp.*, 573 U.S. at 223; (*see* Mot Dismiss, Dkt. 15, at 14, 18 (citing *Alice Corp.*, 573 U.S. at 223 ("the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention"))).

Visible responds that a method patent can satisfy *Alice* step two even if it is implemented using generic technology, so long as the method is an inventive process that would not have been well-understood, routine, and conventional to a person having ordinary skill in the art at the time of the invention. (Resp. Mot. Dismiss, Dkt. 16, at 14–16, 19–20). This is true. *See BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) ("[A]n inventive

6

concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."). Indeed, the Federal Circuit has repeatedly found that method patents satisfy *Alice* step two when the patented method is inventive, even though its implementation is described in purely functional terms using generic, well-known technology.

In *BASCOM*, for example, the patent at issue described a website-filtering tool whose claims recited generic components, "none of which [were] inventive by [themselves]." *Id.* at 1349. Nonetheless, at the motion-to-dismiss stage, the court found that the "particular arrangement" of familiar elements could be read as an improvement on prior-art web filters. *Id.* at 1350–51. "This technical solution overcame defects in prior art embodiments and elevated an otherwise abstract idea to a patentable invention." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1152 (Fed. Cir. 2016) (summarizing and citing *BASCOM*, 827 F.3d at 1350).

In *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016), one patent at issue concerned a computer program that would correlate and enhance accounting records. *Id.* at 1299. Although the representative claim's solution required "generic components" such as "'gatherers' which 'gather' information," the claim required that "these generic components operate in an unconventional manner to achieve an improvement in computer functionality." *Id.* at 1300–01.

In *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), a representative claim recited generic elements such as a "computer store containing data," "web pages belong[ing] to . . . web page owners," and "a computer server." *Id.* at 1250. But "taken together as an ordered combination," the patent claims described a process that "override[d] the routine and conventional sequence of events" that occurred when a website visitor clicked a hyperlink, so as to solve a preexisting problem. *Id.* at 1258–59.

Following these cases, the *Alice* step two inquiry is not resolved simply by observing that Visible's patents may be implemented using generic components. The central question is whether

7

the claims at issue contain limitations that, considered together, form an ordered combination of steps that was not well-understood, routine, and conventional at the time of invention. *Amdocs*, 841 F.3d. at 1301–02. Visible has alleged in non-conclusory fashion that they do. (*See* Am. Compl., Dkt 14, at 8 (alleging that a person of ordinary skill at the time would have understood that the conventional method of operationally associating call participants' voice and data connections was through pre-registration)). At this stage in the litigation, the Court must credit Visible's allegations. *Aatrix*, 882 F.3d at 1128.

At the hearing on this motion, counsel for Zoho admitted that the inventiveness (or lack thereof) of Visible's patents is a fact issue, which is necessarily not properly resolved against Visible's well-pleaded allegations at this stage of the litigation. In supplemental briefing, however, Zoho argues that this issue is ripe for determination now, as Visible cannot plausibly argue that "sharing by selecting a document and a person to share it with" (in the case of the '203 Patent) or "provision of a code for identification of [an] individual" (in the case of the '392 Patent) is "anything but conventional." (Zoho Supp. Br., Dkt. 35, at 11–12). But Zoho's characterizations of the claims at issue elide their allegedly inventive aspects. For the '392 Patent, the prior art, like the patented method, allegedly involved the provision of an identification code; the inventiveness of the patent's method is that the code is generated not at pre-registration, but upon dialing into the conference call. (Am. Compl., Dkt. 14, at 8–9). For the '203 Patent, the prior art, like the patented method, allegedly allowed document sharing, but did not provide hosts and users with status information. (*Id.* at 13–14). These limitations may ultimately prove not to be inventive. But at this stage in the litigation, given Visible's well-pleaded allegations, the Court cannot find otherwise. *See Aatrix*, 882 F.3d at 1129 (holding that the district court erred in concluding, contrary to the plaintiff's well-pleaded allegations, that the data file described in the patent at issue was a "well understood" and "routine" component).

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that Zoho's motion to dismiss, (Dkt. 15), is **DENIED**.

**SIGNED** on May 30, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE