**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| VISIBLE CONNECTIONS, LLC, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | §   Civil Action No. 1:18-CV-859-RP |
| | § |
| ZOHO CORPORATION | § |
| | § |
| Defendant. | § |
| | § |

**ZOHO CORPORATION'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iii

I. INTRODUCTION .............................................................................................................. 1

II. THE '203 PATENT ........................................................................................................... 1

    A. The Preamble of Claims 34 and 37 Are Limiting ...................................................... 1

    B. "Interface Program" ................................................................................................... 2

    C. "Call Manager" .......................................................................................................... 3

    D. "Document" ............................................................................................................... 4

    E. "Automatically" ......................................................................................................... 6

    F. The Asserted Dependent Claims of the '203 Patent Are Indefinite ........................... 7

        1. Claims 35, 36, 38, and 39 Improperly Combine System and Method Claims ....... 7

        2. "Substantially Real-Time" Is Indefinite .................................................................. 9

III. THE '392 PATENT ........................................................................................................ 11

    A. The Preamble of Claim 1 Is Limiting ...................................................................... 11

    B. "generating a unique temporary code *when* a data connection is established" ...... 11

IV. CONCLUSION ............................................................................................................... 12

CERTIFICATE OF SERVICE .............................................................................................. 13

## **TABLE OF AUTHORITIES**

*Bicon, Inc. v. Strauman Co.*,
441 F.3d 945 (Fed. Cir. 2006)..................................................................................2, 11

*Cat Tech LLC v. TubeMaster, Inc.*,
528 F.3d 871 (Fed. Cir. 2008) ........................................................................................12

*Datamize, LLC v. Plumtree Software, Inc.*,
417 F.3d 1342 (Fed. Cir. 2005)........................................................................................9

*Eaton Corp. v. Rockwell Int'l Corp.*,
323 F.3d 1332 (Fed. Cir. 2003)........................................................................................2

*Elekta Instruments S.A. v. O.U.R. Scientific Int'l, Inc.*,
214 F.3d 1302 (Fed. Cir. 2000)......................................................................................12

*Honeywell Int'l, Inc. v. ITT Indus., Inc.*,
422 F.3d 1312 (Fed. Cir. 2006)........................................................................................3

*In re Katz Call Processing Patent Litigation*,
639 F.3d 1303 (Fed. Cir. 2011)........................................................................................8

*Interval Licensing, LLC v. AOL, Inc.*,
766 F. 3d 1364 (Fed. Cir. 2014).......................................................................................9

*IPXL Holdings, LLC v. Amazon.com, Inc.*,
430 F.3d 1377 (Fed. Cir. 2005)....................................................................................7, 8

*MasterMine Software, Inc. v. Microsoft Corp.*,
874 F.3d 1307 (Fed. Cir. 2017)....................................................................................7, 8

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
134 S. Ct. 2120 (2014).....................................................................................................9

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)........................................................................................5

*Tech Pharmacy Services, LLC v. Alix RX LLC et al.*,
Case No. 4:15-cv-0766-ALM (E.D. Tex. October 28, 2017) ..........................................9

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
659 F.3d 1376 (Fed. Cir. 2011)........................................................................................5

*Verizon Services Corp. v. Vonage Holdings Corp.*,
503 F.3d 1295 (Fed. Cir. 2007)........................................................................................3

I.      INTRODUCTION

With no support for its claim construction positions, Visible Connections resorts to turning a blind eye. Its Opening Claim Construction Brief ignores the clear language of the '203 and '392 patent claims. It ignores the disclosures in the patents' specifications. It ignores the understanding of one skilled in the art. And it ignores the effect of the law. In contrast, Zoho proposes constructions that give meaning to the words in the claims, reflect the teachings set forth in the patents, and comport with the understanding of the skilled artisan. Accordingly, Zoho respectfully requests the Court apply the law to the intrinsic and extrinsic evidence, adopt Zoho's proposed constructions, and find the asserted dependent claims of the '203 patent invalid for indefiniteness.

II.     THE '203 PATENT

   A.     The Preamble of Claims 34 and 37 Are Limiting

Visible Connections' tactic of avoidance begins with its disregard of the language of claims 34 and 37 of the '203 patent when arguing that the preambles are not limiting. Specifically, Visible Connections argues that "the body of the claims 'do not rely upon and derive antecedent basis'" from the preamble. VisiConn Op. Brief (Dkt 40) at 6. Visible Connections' arguments are belied by the words of the claims, which very clearly demonstrate that the body of the claims derive meaning and antecedent basis from the preamble. The preambles recite "a system for application sharing"; the body of claims 34 and 37 both go on to recite a "call manager configured to manage calls . . . for ***the* application sharing**." '203 patent at cl. 34 (16:45, 16:51-53), cl. 37 (17:1, 17:9-11) (emphasis added).

Visible Connections cannot avoid the effect of the words in the patent claims by simply ignoring them. The preamble's recitation of "a system for application sharing" is not merely a stated purpose or intended use of the system. *See* Dkt 40 at 5. The claim language specifically

1

requires application sharing. In fact, it requires *the* application sharing recited in the preamble. '203 patent at cl. 34 (16:45, 16:51-53), cl. 37 (17:1, 17:9-11). It is in exactly this situation that the Federal Circuit has repeatedly found the claim preambles to be limiting. *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1340 (Fed. Cir. 2003) (preamble reciting method for controlling a . . . driveline system" was limiting where the body of the claims referred by to the driveline); *Bicon, Inc. v. Strauman Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006) (where preamble contained structural limitations that the body of the claim referenced back to, the preamble was limiting).

    **B.**    **"Interface Program"**

Visible Connections then moves from ignoring the claim language to ignoring the '203 patent's description of the invention in challenging Zoho's proposed construction of "interface program." Based on the specification's description of the '203 patent invention, Zoho proposes a construction that makes clear that the claimed "interface program" is a program separate and distinct from an underlying conferencing program. Visible Connections does not offer a competing construction, but instead argues that the Court should reject Zoho's construction because the claims do not recite (and thus, do not require) a separate conferencing program. *See* Dkt 40 at 6-7.

Visible Connections' strawman argument misses the point and disregards the '203 patent's description of the invention. The asserted claims all recite "an interface program." '203 patent, cls. 34-39. The specification leaves no doubt as to what this claimed "interface program" is. The patent explains that conferencing programs with application sharing capabilities like NetMeeting and ProShare were well-known but difficult to use. *Id*. at 1:25-55. Thus, the purported invention of the '203 patent is not one of these known underlying conferencing

programs, but a distinct "interface program [that] in cooperation with a conferencing program facilitates application sharing[.]" *Id*. at Abstract.

Even Visible Connections admits that "[t]he claimed invention is the interface program." Dkt. 40 at 5. And the specification is unwavering in its description of the interface program as something separate and distinct from underlying conferencing programs: "**The invention** relates . . . specifically, to an **interface program** <u>to an</u> ***underlying conferencing program*** having an application sharing capability." '203 patent at 1:5-10 (emphasis added); *see also* Zoho Op. Brief (Dkt. 39) at 4-7, 10-11. Indeed, that is what the patent says is the entire point of the invention, to provide an interface separate from the underlying conferencing programs that makes conferencing and application sharing more user friendly. *E.g.* '203 patent at 1:15-2:27, 4:37-52; Dkt 39 at 10.

Therefore, contrary to Visible Connections' argument, Zoho is not attempting to import limitations from a preferred embodiment into the '203 patent claims. *See id*. at 7. Zoho is construing the "interface program" exactly as the applicants described the invention throughout the patent specification, to be a separate from the underlying conferencing program. *See Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 422 F.3d 1312, 1318 (Fed. Cir. 2006) (construing terms to limit claim scope to that which written description repeatedly referred to as "this invention" or the "present invention"); *Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007) (construing terms consistent with how patent described features as "the present invention"). And that is how the Court should construe it as well.

### C.    "Call Manager"

The parties agree that, as the patent states, a "call manager" is a well-known term in telecommunications. Dkt 39 at 11; Dkt 40 at 8; '203 patent at 11:46-65. Visible Connections argues no construction is needed, that the term is readily understood by those skilled in the art.

3

But Visible Connections' position begs the question: what does one skilled in the art understand the "call manager" to be?

Zoho is the only party to answer that question. It offers the testimony of Dr. Lantz to show that one skilled in the art at the time of the invention would have understood a "call manager" to be "a server in an IP telephony system that controls call processing for client endpoints, including address resolution, call routing, device configuration and call detail record generation." *See* Dkt 39 at 11-14, *citing* Lantz Decl. ¶¶ 28-33, Ex. B. As explained in Zoho's Opening Brief, Dr. Lantz's testimony is based on usage of the term at the time of the '203 patent invention throughout the telecommunications industry. *Id*. Dr. Lantz's understanding and Zoho's proposed construction is consistent with the patent specification's explanation that call managers "manage[] calls of clients . . . which may be respective computer systems as described elsewhere herein, including calling one or more clients, and maintaining and updating connection status information associated therewith." '203 patent at 11:52-56.

Visible Connections offers no evidence of its own as to what the understanding of one skilled in the art is. Thus, the entirety of the intrinsic and extrinsic evidence supports Zoho's proposed construction. Visible Connections contends that Zoho seeks to import limitations from the specification, but there is no single embodiment to which Zoho seeks to limit the scope of the claims. Everyone agrees that the scope of the term "call manager" is defined by the knowledge of one skilled in the art. Zoho has shown what that is and therefore, this Court should adopt its proposed construction.

### D. "Document"

Visible Connections again attempts to skirt the issues in this case by refusing to provide a construction for "document" while opposing Zoho's proposed construction. Zoho bases its proposed construction on the applicants' representations in its Complaint and to the Patent Office

regarding the scope of the term "document." As explained in Zoho's Opening Brief, this construction comes directly from Visible Connections' First Amended Complaint. *See* Dkt. No. 14, ¶ 50 ("A person skilled in the art at the time of the invention would understand that the improvements of claim 35 of the '203 Patent allow the users to share documents (as opposed to application windows) …."). In addition, during prosecution, to overcome prior art, the applicants explicitly distinguished the "document" claimed in the '203 patent from application windows. *See* Dkt 39 at 19-20, *citing* Marton Decl., Exs. B (at 15-16), C (at 7-8), and D (at 8-9).

Visible Connections fails to address what the applicants told the Patent Office, arguing that the term "document" is well-understood and set forth in the specification as "any electronic form of media, including without limitation an electronic version of a spreadsheet, word processing text, picture, slide, video, audio, and the like." Dkt 40 at 15, *citing* '203 patent at 3:52-56. Visible Connections' argument ignores the issue. Nothing in Zoho's proposed construction is inconsistent with the common understanding of "document" set forth in the specification. Zoho's proposed construction simply seeks to confirm what applicants explained to the Patent Office: that the common understanding of "document" does not include application windows. That's what the applicants told the Patent Office to secure issuance of the patent and that's what the Court should construe the claims to mean now. *See Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1381 (Fed. Cir. 2011) (finding district court's construction narrowing claims was in accord with the patentee's statements in the specification and during prosecution); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is 'to exclude any interpretation that was disclaimed during prosecution.").

E.     "Automatically"

Claims 35 and 38 of the '203 patent further require that the "interface program *automatically* establishes at least a substantially real-time shared viewing[.]" Visible Connections again offers no construction for the term "automatically." Zoho's proposed construction – that "automatically" be interpreted to mean "without human intervention" – is consistent with both the intrinsic and extrinsic evidence.

The patent repeatedly explains that the "interface program" of the invention "facilitates application sharing by reducing it to a two-step process hiding underlying details from the user." *E.g.* '203 patent, Abstract. The patent describes the two-steps as the user selecting one or more documents for sharing and then selecting one or more people with whom to share the documents, "[a]fter which, connectivity and any associated activity is automatically initiated." *Id*. at 2:2-7. The specification states that the interface program "minimally uses two user steps for invoking application sharing." *Id*. at 4:32-33. Thus, consistent with the specification's disclosures "automatically" means no user intervention after these two user steps. Indeed, the claim language itself makes clear that there is no user intervention other than selection of the documents and recipients: "the host user *only* selects the at least one document . . . and the at least one audience member." *Id*., cls. 35 (16:61-65), 38 (18:6-10).

This understanding set forth in the specification and claims is also consistent with how one of ordinary skill understands "automatically" in the telecommunications field. Zoho's expert Dr. Lantz explains that one of ordinary skill reading the specification understands "automatically" to mean no human intervention after the two user steps described in the specification. *See* Dkt 39 at 12, *citing* Lantz Decl. ¶ 41. Visible Connections offers no citations to the specification and no other intrinsic or extrinsic evidence to suggest "automatically" means

6

anything different than what Zoho proposes. Indeed, Visible Connections' argument effectively reads out the term "automatically," failing to give the word any meaning at all.

### F. The Asserted Dependent Claims of the '203 Patent Are Indefinite

#### 1. Claims 35, 36, 38, and 39 Improperly Combine System and Method Claims

Claims 35, 36, 38, and 39 of the '203 patent are all system claims that further include the limitation:

> wherein the **host user** only **selects the at least one document** to be shared **and the at least one audience member** with whom to share the at least document **to initiate** the substantially real-time **shared viewing**.

*E.g.* '203 patent, claim 35 (16:61-65) [emphasis added]. As explained in Zoho's Opening Brief, the problem with this additional limitation is that it recites an action to be taken by a user, rather than functionality of the system components. *See* Dkt 39 at 14-16. Claims that are directed to a system but then require a step to be taken by a user are invalid as they leave the public unsure as to whether infringement occurs when the system is created or when method steps are performed. *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005).

Visible Connections attempts to escape the effect of *IPXL* by arguing that there is no prohibition against system claims using active verbs to recite functionality of the system. Dkt 40 at 10-11. Specifically, Visible Connections relies on *MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1315-16 (Fed. Cir. 2017). But the claim language at issue here is not analogous to that in *MasterMine*. In *MasterMine*, the claim language was directed to a "reporting module" that:

> *presents* a set of user-selectable database fields as a function of the selected report template;
> *receives* from the user a selection of one or more of the user-selectable database fields, and
> *generates* a database query as a function of the user selected database fields.

*Id*. at 1315.  The Federal Circuit noted that each of the verbs used (presents, receives, generates) described the capabilities of the "reporting module."  *Id*. at 1315-16.  *MasterMine* specifically noted that, unlike in *IPXL* and *Katz*, the claims "do not explicitly claim the user's act of selection, but rather, claim the system's capability to receive and respond to user selection."  *Id*. at 1316.  No one disputes that system claims can recite functionality of the system components.  That is not the issue here.  Indeed, Zoho does not take issue with any of the numerous other action verbs used in the '203 patent claims that focus on the functionality of the claimed system components.  *See e.g.* '203 patent, claim 34 ("*call manager* configured *to manage* calls"; "*interface program . . .* configured *to maintain* status information"); claim 35 ("*interface program* automatically *establishes*").

The issue is whether a system claim requires a user to perform certain acts.  And as to this issue *MasterMine* actually highlights the distinction that proves fatal to the '203 patent claims.  Unlike the claim language in *MasterMine*, claims 35, 36, 38, and 39 explicitly claim ***the user's*** act of selection:  "wherein ***the host user*** only <u>***selects***</u> the at least one document to be shared and the at least one audience member with whom to share the at least document."  *E.g.* '203 patent, claim 35.  Whereas each of the action verbs in *MasterMine* was recited as a capability or function of the system component (*i.e.* the reporting module), the act of selecting as claimed in the '203 patent is not recited as a function of the system component (*i.e.* the interface program), but as an act of a user.  The focus on specific actions performed by the user is exactly what *MasterMine* acknowledged is prohibited by the Federal Circuit in *IPXL* and *Katz*.  *See MasterMine*, 874 F.3d at 1316*, citing  IPXL*, 430 F.3d at 1384 (invalidating system claims that recited "the ***user*** <u>***uses***</u> the input means"); *In re Katz Call Processing Patent Litigation*, 639 F.3d 1303, 1318 (Fed. Cir. 2011) (invalidating system claims that recited "certain of ***said individual callers*** digitally <u>***enter***</u> data").

8

Thus, examination of the caselaw proves that all the Federal Circuit cases are in accord. System claims that explicitly claim a user's act are indefinite and invalid. Claims 35, 36, 38, and 39 do exactly that; they explicitly claim a user selecting documents and recipients. Accordingly, the Court should find these claims invalid.

### 2. "Substantially Real-Time" Is Indefinite

The parties dispute whether the term "substantially real-time" informs, with reasonable certainty, those skilled in the art about the scope of the invention. *See Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014). Visible Connections' primary argument is that Federal Circuit has long approved of the use of terms of degree. Dkt 40 at 12-13. While it is true that terms of degree have been found valid, for such terms to be valid "the patent's specification [must] suppl[y] some standard for measuring the scope of the phrase." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342 (Fed. Cir. 2005). In other words, the intrinsic record needs to provide "objective boundaries" such that the public knows the scope of the patent owner's potential monopoly. *Interval Licensing, LLC v. AOL, Inc.*, 766 F. 3d 1364, 1371 (Fed. Cir. 2014). Visible Connections has not and cannot identify objective boundaries for "some amount of propagation delay."

Instead, Visible Connections relies on a single unpublished claim construction order from the Eastern District of Texas, *Tech Pharmacy Services, LLC v. Alix RX LLC et al.*, Case No. 4:15-cv-0766-ALM, Dkt 121, Memorandum and Order (E.D. Tex. October 28, 2017), addressing the term "*near* real-time" in the context of "*near* real-time" verification of digital images of pharmacy prescriptions and dispensing medication between a pharmacy and a remote long-term care facility. In finding the term "*near* real-time" not indefinite, the district court cited the repeated use of the term throughout the specification and the patent's use of video conferencing as an example of "*near* real-time" verification and medication dispensing. *Id*. at 33-34. In so

9

doing, the district court specifically noted the context and usage provided by the specification. *Id*. at 34.

The '203 patent specification, however, fails to provide any analogous example or context for the "*substantially* real-time" viewing.  Visible Connections identifies a single passage from the specification to elucidate the meaning of "substantially real-time":  "'by substantially real-time shared viewing,' is meant WYSIWIS with some amount of propagation delay." Dkt 40 at 12, *citing* '203 patent at 1:37-38.  But defining "substantially real-time" as "some amount of propagation delay" begs the question: how much propagation delay is acceptable?  Without some meaningful delineation on the scope of acceptable propagation delay, the term "substantially real-time" carries no meaning in the claims and fails to inform one of ordinary skill in the art of the scope of the claims with reasonable certainty.

And indeed, that is what Zoho's expert, Dr. Lantz, explains.  The patent specification does not provide one of ordinary skill in the art any standard by which to measure an acceptable amount of propagation delay.  *See* Lantz Decl. ¶ 40.  Visible Connections contends that the specification explains that "substantially real-time" refers to prior art WYSIWIS methods of shared viewing.  *See* Dkt 40 at 13.  But what the specification really says is "substantially real-time" is prior art "WYSIWIS **with some amount of propagation delay.**"  The intrinsic record leaves unanswered what additional amount of propagation delay falls within the scope of the term "substantially real-time."  And Visible Connection has not and cannot offer any extrinsic or other evidence as to what one of ordinary skill in the art would have relied on at the time to provide reasonable certainty as to what would or would not infringe the patent claims.  It is in such situations, where the intrinsic and extrinsic record fails to provide any objective boundaries that courts have repeatedly found terms of degree like "substantially" to be indefinite.  *See* Dkt 39 at 17-18.

### III.   THE '392 PATENT

#### A.   The Preamble of Claim 1 Is Limiting

Visible Connections once again argues that the preamble merely describes a purpose or intended use of the claimed system, while ignoring the actual words and language of the claim. Dkt 40 at 18.  But an actual examination of claim 1 of the '392 patent reveals the fallacy in Visible Connection's argument.

> Claim 1 preamble recites:
>
> A method for associating *a participant's telephone connection* to *a conference call system* with a *data connection* from said *participant's computer screen* to said conference call system, said conference call system establishing voice connections between itself and multiple conference call participants, said method comprising:

'392 patent, claim 1 (emphasis added).  The rest of the body of claim 1 recites:

> generating a unique temporary code when *a data connection* is established between *said participant* and *said conference call system*;
> displaying said code over *said data connection* to *said participant* on *that participant's computer screen*; and
> instructing *said participant* to enter said code over *his telephone connection* to *the conference call system*.

'203 patent, claim 1 (emphasis added).  As shown by the colors above, the preamble provides the antecedent basis for at least five different terms used throughout the body of claim 1.  As such, the preamble is inextricably entwined with the claimed invention and necessarily gives life and meaning to the claims.  There can be no doubt that the preamble is a vital part of the claim and this Court should construe it to be limiting.  *See, e.g., Bicon*, 441 F.3d at 952.

#### B.   "generating a unique temporary code *when* a data connection is established"

Zoho proposes a construction of "generating a unique temporary code *when* a data connection is established" as generating the code "*at the moment*" a data connection is established, consistent with its usage throughout the '392 patent specification.  *See* Dkt 39 at 25-

11

26. Visible Connections ignores how the generation of the code is described throughout the patent specification. Instead, without any support from the intrinsic record, Visible Connections argues that the term "when" simply "describes a temporal limitation on how long the code is valid." Dkt 40 at 19. But the temporal limitation is already captured by the term "temporary" in the phrase "generating a unique temporary code." To suggest that the additional limitation of "when a data connection is established" means the same thing as "temporary" would render the words redundant and deprive them of any meaning. *See Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 885 (Fed. Cir. 2008) (refusing to adopt a claim construction which would render a claim limitation meaningless); *Elekta Instruments S.A. v. O.U.R. Scientific Int'l, Inc.*, 214 F.3d 1302, 1305-07 (Fed. Cir. 2000) (refusing to adopt a claim construction which would render claim language superfluous).

Zoho's proposed construction is faithful to the description throughout the patent specification of how the temporary code is generated and gives meaning to all the words in the claim and should thus be adopted by the Court.

## IV.   CONCLUSION

For the foregoing reasons, Zoho respectfully requests the Court find claims 35, 36, 38, and 39 of the '203 patent invalid for indefiniteness and otherwise adopt the proposed constructions for the disputed terms of the '203 and '392 patents.

        Respectfully submitted,

        MARTON RIBERA SCHUMANN & CHANG LLP
        548 Market Street, Suite 36117
        San Francisco, California 94104
        (415) 360-2511 Telephone

By:    */s/ Ryan Marton*
        Ryan Marton (admitted *pro hac vice*)
        Hector Ribera (admitted *pro hac vice*)
        Carolyn Chang (admitted *pro hac vice*)
        Email:   ryan@martonribera.com

        GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
        401 Congress Avenue, Suite 2700
        Austin, Texas 78701
        (512) 480-5725 Telephone
        (512) 536-9938 Telecopier
        Matthew C. Powers
        State Bar No. 24046650
        mpowers@gdhm.com

        ATTORNEYS FOR DEFENDANT ZOHO CORPORATION

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing is being served on the counsel of record via the CM/ECF system on this 8th day of October, 2019.

By:    */s/ Matthew C. Powers*
        Matthew C. Powers

13