IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| VISIBLE CONNECTIONS, LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | 1:18-CV-859-RP |
| ZOHO CORPORATION, | § § § | |
| Defendant. | § § | |

**ORDER**

This case concerns claims contained in U.S. Patent No. 7,284,203 (the " '203 Patent") and U.S. Patent No. 6,665,392 (the " '392 Patent"). Now before the Court are Visible Connections, LLC's ("VisiCon") Opening Claim Construction Brief, (Dkt. 40), Zoho Corporation's ("Zoho") Opening Claim Construction Brief, (Dkt. 39), VisiCon's Responsive Claim Construction Brief, (Dkt. 44), and Zoho's Responsive Claim Construction Brief, (Dkt. 43). On October 15, 2019, the Court held a claim-construction hearing. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). After considering the patent's claims, specifications, and prosecution history, as well as the parties' claim-construction briefs, applicable law, and presentations by counsel, the Court issues this order to construe the claims of the '203 and the '392 Patents.

**I. LEGAL STANDARD**

There are two elements in a patent case. First, the Court construes the meaning and scope of the relevant claim terms in the patent, and then the Court compares the construed claims to the accused device to determine whether an infringement occurred. *Markman*, 52 F.3d at 976. Claim construction is a legal issue; the Court construes the patent claims without the aid of a jury. *Id.* at 977–78. Here, the Court is asked to construe the claims in the '203 and the '392 Patents.

1

When construing claims in a patent, the "words of a claim 'are generally given their ordinary and customary meaning.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). The "ordinary and customary meaning" is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1313. A person of ordinary skill in the art is deemed to have read the claim term in the context of the entire patent. *Id.* Thus, "[t]o ascertain the meaning of claims, [the Court] consider[s] three sources: The claims, the specification, and the prosecution history." *Markman*, 52 F.3d at 979 (quoting *Unique Concepts, Inc. v. Brown*, 939 F.2d 1558, 1561 (Fed. Cir. 1991)).

"In light of the statutory directive that the inventor provide a 'full' and 'exact' description of the claimed invention, the specification necessarily informs the proper construction of the claims." *Phillips*, 415 F.3d at 1316. Indeed, "the single best guide to the meaning of a disputed term" is the specification, which "acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Id.* at 1321 (quoting *Vitronics*, 90 F.3d at 1582). It is "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." *Id.* at 1317. If necessary, the court should also consider the patent's prosecution history to construe claim language. *Markman*, 52 F.3d at 980. "Although the prosecution history can and should be used to understand the language used in the claims, it too cannot 'enlarge, diminish, or vary' the limitations in the claims." *Id.*

Finally, the Court may rely on extrinsic evidence to construe the claims, such as expert and inventor testimony, dictionaries, and learned treatises. *Id.* Extrinsic evidence, however, is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Phillips*, 415 F.3d at 1319. Like prosecution history, extrinsic evidence can be helpful to clarify a court's understanding and the meaning of claim terms, but it cannot be used to "vary[ ] or contradict[ ] the

2

terms of the claims." *Markman*, 52 F.3d at 981. Extrinsic evidence in the form of expert testimony "can be useful to a court for a variety of purposes, such as to provide background on the technology at issue, to explain how an invention works, to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of skill in the art, or to establish that a particular term in the patent or the prior art has a particular meaning in the pertinent field." *Phillips*, 415 F.3d at 1318. "However, conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court." *Id.* The Court should discount any expert testimony "clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent." *Id.*

## II. DISCUSSION

The parties dispute the meaning of eight claim terms across the two patents. (*See* Chart, Zoho's Br., Dkt. 39, at 5). The following table summarizes the disputed terms and the parties' proposed constructions:

| '203 patent term | VisiCon's proposed construction | Zoho's proposed construction |
|---|---|---|
| Preamble of claims 34 and 37<br><br>"A system for application sharing comprising" | Not limiting | Limiting |
| "Interface program" | No construction needed | "A user-facing program that enables a user to initiate application sharing but relies on a separate conferencing program to effect the actual sharing." |
| "Call manager" | No construction needed | "A server in an IP telephony system that controls call processing for client endpoints, including address resolution, call routing, device configuration and call detail record generation." |

3

| "Substantially real time" | WYSIWIS with some amount of propagation delay | Indefinite. |
| "Document" | No construction needed | "document (as opposed to an application window)" |
| "Automatically" | No construction needed | "without human intervention" |

| '392 patent term | VisiCon's proposed construction | Zoho's proposed construction |
|---|---|---|
| Preamble | Not limiting | Limiting |
| "When" | No construction needed | "at the moment" |

The Court will begin its analysis with the disputed claims in the '203 patent.

### A. The '203 Patent

The '203 Patent describes a method for improving real-time document sharing. (Am. Compl., Dkt. 14, at 4–16). According to VisiCon, the '203 Patent improves on prior art by allowing sharing without preexisting knowledge of associated conferencing programs and by providing data about participants to the host. (*Id.* at 13–14).

#### 1. Preamble of claims 34 and 37

| Term to be Construed | VisiCon's construction | Zoho's construction |
|---|---|---|
| "A system for application sharing comprising" (preamble to claims 34 and 37) | Not limiting | Limiting |

The preamble to claims 34 and 37 states, "[a] system for application sharing comprising." ('203 Patent, claim 34, 37). The parties dispute whether the preamble is limiting. VisiCon argues that the preamble is not limiting because it "merely states a purpose or intended use for the invention." (VisiCon Br., Dkt. 40, at 5). According to VisiCon, the claimed invention is the interface program and "application sharing" is "merely a purpose or intended use of the interface program invention." (*Id.*). Zoho, on the other hand, contends the preamble is limiting because it provides an antecedent basis for the term "application sharing" found in the bodies of claims 34 and 37. (Zoho Br., Dkt. 39, at 9 (citing *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361 (Fed. Cir. 2005)).

4

Determining whether a preamble is limiting requires a "review of the entire patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (quoting *Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989)). Generally, a preamble limits the invention "if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." *Id.* (quoting *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999). Conversely a preamble is not limiting "where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997). While there is no litmus test for determining whether a preamble is limiting, "dependence on a particular disputed preamble phrase for antecedent basis may limit claim scope because it indicates a reliance on both the preamble and claim body to define the claimed invention." *Catalina Mktg. Int'l, Inc.*, 289 F.3d at 808; *see also Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995) ("[W]hen the claim drafter chooses to use *both* the preamble and the body to define the subject matter of the claimed invention, the invention so defined, and not some other, is the one the patent protects."). In other words, "when the preamble is essential to understanding limitations or terms in the claim body, the preamble limits claim scope." *Catalina Mktg. Int'l, Inc.*, 289 F.3d at 808.

The Court concludes that the preamble phrase is not limiting. First, claims 34 and 37, standing alone, describe a structurally complete invention. *Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358–59 (Fed. Cir. 2010) ("A preamble is not regarded as limiting, however, "when the claim body describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention."). The preamble phrase "[a] system for application sharing, comprising" does not "embody an essential component of the invention" and its deletion would not alter the invention "fully set forth in the bodies of the claims." *Id.* at 1359.

Second, the preamble term does not provide a necessary antecedent basis for terms in the bodies of each claim. While Zoho contends that the preamble term provides an antecedent basis for the term "the application sharing" in the bodies of each claim, it does not explain how the preamble term illuminates the meaning of terms within the body of the claims or the context essential for understanding their meaning. Zoho's reliance on *Seachange Int'l, Inc.* is therefore unavailing. In *Seachange Int'l, Inc.*, the preamble stated that the claimed method was for storing data in a "distributed computer system" which had "at least three processor systems" and further described the components of a "processor system" to be "at least one central processing unit" and "at least one mass storage subsystem." 413 F.3d at 1376. The steps of the claimed invention in the body repeatedly included the term "*said* processor systems." *Id.* (emphasis in original). The Federal Circuit concluded that the preamble provided "the only antecedent basis and thus the context essential to understand the meaning of "processor system" and accordingly limited the scope of the claimed invention. *Id.* Here, the preamble term "[a] system for application sharing comprising" does not provide a necessary antecedent basis for the term "the application sharing" in the bodies of the independent claims. *See Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1359 (Fed. Cir. 2010). Nor does the preamble term provide any essential context for understanding the meaning of terms in the body of each claim. *Id.* Because deletion of the preamble would not affect the structure of the claimed invention and the preamble does not provide a necessary antecedent basis for the terms in the claims' body, the Court concludes the preamble to claims 34 and 37 does not limit the scope of the claimed invention.

2. <u>"interface program"</u>

| Term to be Construed | Plaintiff's construction | Defendant's construction |
|---|---|---|
| "interface program" ('203 Patent, claims 34, 35, 37, and 38) | no construction needed | "A user-facing program that enables a user to initiate application sharing but relies on a separate conferencing program to effect the actual sharing." |

The parties dispute whether the interface program in the patent relies on a separate conferencing program. Zoho argues that "interface program" should be construed as "a user-facing program that enables a user to initiate application sharing but relies on a separate conferencing program to effect the actual sharing." (Zoho Br., Dkt. 39, at 10). In support of this construction, Zoho contends that "in all instances in the specification the 'interface program' is described as a program that is separate from an underlying conferencing program." (*Id.*). Zoho further contended at the hearing that the whole point of the patent was to facilitate the use of an underlying conferencing program by having an interface that sits on top of off-the-shelf conferencing programs, which—prior to the patent—required knowledge of the conferencing program to properly configure them for application sharing. (Markman Hr'g, Dkt. 47). VisiCon does not offer a competing construction but does argue that the term "interface program" is not restricted to a program that is "separate" from a conferencing program because "[n]one of the asserted claims in which 'interface program' appears contains the term 'conferencing program.'" (VisiCon Br., Dkt. 40, at 7).

The Court adopts Zoho's construction of "interface program" because it comports with the stated purpose of the patent and the use of the term throughout the specification. First, the entire point of the invention was to create "an interface program to an *underlying* conferencing program having an application sharing capability." ('203 Patent 1:8–10) (emphasis added). While then-existing

conferencing programs required users to understand how to use the underlying application, the patented invention purported to build on prior art by "enabl[ing] a user to share applications without having to have any knowledge of an underlying application." ('203 Patent at 1:56–58). Moreover, the invention is described throughout the specification as a program separate from an underlying conferencing program. *See, e.g.*, ('203 Patent at 4:37–40 ("Because interface program provides a *separate* interface from an *underlying* conferencing application, application sharing without user knowledge of this *underlying* conferencing program is facilitated.") (emphasis added); *id.* at 1: 6–10 ("The invention relates generally to an interface program for sharing an application program between two or more computers and, more specifically, to *an interface program to an underlying conferencing program* having an application sharing capability.") (emphasis added); *id.* at 64–67 ("[a]s interface program [ ] is interacting with an *underlying* communication system") (emphasis added)). Claim language must always be read with the written description in mind. *See Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 653 F.3d 1296, 1305 (Fed. Cir. 2011) ("It is axiomatic that the claim construction process entails more than viewing the claim language in isolation. Claim language must always be read in view of the written description."); *Phillips*, 415 F.3d at 1315 ("[C]laims must be read in view of the specification, of which they are a part . . . [the specification] is dispositive; it is the single best guide to the meaning of a disputed term."). Because Zoho's construction of "interface program" best "tether[s] the claims to what the specifications indicate the inventor actually invented," (*id.*), that is, "an interface program to an underlying conferencing program having an application sharing capability," ('203 Patent at 1:8-10), the Court accordingly adopts Zoho's construction.

8

3. **"Call manager"**

| Term to be Construed | Plaintiff's construction | Defendant's construction |
|---|---|---|
| "Call manager" ('203 Patent, claims 34 and 37) | no construction needed/plain and ordinary meaning | "A server in an IP telephony system that controls call processing for client endpoints, including address resolution, call routing, device configuration and call detail record generation." |

While the parties agree that "call manager" is a well-known term in the telecommunications industry, they dispute whether the term "call manager" must include all of the detail and precise functionality of Zoho's proposed construction. (VisiCon Br., Dkt. 40, at 8). VisiCon contends that no construction is needed for the term "call manager" because the term is "well known in telecommunications." (*Id.* at 8). Zoho argues that because the patent references "call manager" only a few times at the end of the specification and never defines the term, the Court should look to extrinsic evidence to determine its meaning. (Zoho Br., Dkt. 39, at 11). Because the patent states that "call manager" is a term well understood in telecommunications, Zoho consulted an expert in telecommunications, Dr. Lantz, who explained that one skilled in the art would have understood a "call manager" to be "a call processing server or call control server that provided several core functions in an IP telephony system, including address resolution, call routing, device configuration, and call detail record (CDR) generation." (*Id.* at 12). Relying on its expert, Zoho further argues that in the context of the '203 patent and the telecommunications industry in 1999, one skilled in the art would have understood the role of the "call manager" in the patent to be equivalent to the role performed by the call manager in the Selsius Systems CallManager, "one of the best-known IP telephony systems of the late 1990s."(*Id.* at 13). VisiCon counters that this proposed construction injects numerous requirements into the claims, "including an IP telephony system, client endpoints, address resolution, call routing, device configuration, and call detail record generation." (VisiCon

9

Resp. Br., Dkt. 44, at 7–8). VisiCon further contests Zoho's reliance on the Selsius CallManager for a definition here because the '203 patent never refers to Selsius CallManager. (*Id.*). Ultimately, VisiCon contends that because the patent sets forth what a call manager is and does, no construction is necessary. (*Id.* at 9).

The Court agrees that Zoho's reliance on extrinsic evidence attempts to incorporate unnecessary requirements into the term and equate the functionality of the patent's call manager with that of the Selsius Systems CallManager, absent any reference in the intrinsic record to such technology. *Dow Chem. Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1373 (Fed. Cir. 2001) ("[E]xtrinsic evidence may be used only to assist in the proper understanding of the disputed limitation; it may not be used to vary, contradict, expand, or limit the claim language from how it is defined, even implicitly, in the specification or file history."). In determining the proper construction, the Court agrees with VisiCon that "call manager" is "specified with sufficient detail that relying on extrinsic evidence to import a restrictive meaning is unjustified." (VisiCon Resp., Dkt. 44, at 9). But the Court nevertheless concludes that "call manager" requires a construction. To determine the proper construction of the term, the Court looks to the disputed claims and the patent's specification. *Phillips*, 415 F.3d at 1316 ("It is therefore entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims.").

Representative claim 34 states as follows:

A system for application sharing, comprising:

> a *call manager*, the call manager having an interface program;
> a plurality of communication devices for electrical communication with the call manager;
> the *call manager* configured to manage calls to and from the plurality of communication devices for establishing connectivity for the application sharing; and
> the interface program in cooperation with the *call manager* configured to maintain status information regarding the connectivity, the status information including current number of active participants.

10

('203 Patent at 16:46–57) (emphasis added). As VisiCon argues, claim 34 sets forth "what a 'call manager' is and does." (VisiCon Resp., Dkt. 44, at 9). This description parallels the description provided in the specification. ('203 Patent at 11:52–56 ("Call manager manages calls of clients . . . including calling one or more clients, and maintaining and updating connection status information associated therewith.")). In light of claim 34 and the specification, the Court adopts the following construction: a "call manager" works in cooperation with the interface program to manage calls, establish connectivity, and maintain status information, including the number of active participants.[1] *Phillips*, 415 F.3d at 1316 ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.").

4. <u>Indefiniteness of Claims 35, 36, 38, and 39</u>

| Term to be Construed | Plaintiff's construction | Defendant's construction |
|---|---|---|
| Claims 35, 36, 38, and 39<br><br>'203 Patent | Not indefinite | Indefinite because the claims improperly combine system and method claims. |

The parties dispute whether claims 35, 36, 38, and 39 are invalid for indefiniteness. Representative claim 35 reads as follows:

> the system of claim [34, 37], wherein the interface program automatically establishes at least a substantially real-time shared viewing of at least one document between at least one audience member and a host user, wherein the host user only selects the at least one document to be shared and the at least one audience member with whom to share the at least one document to initiate the substantially real-time shared viewing.

---

[1] At the hearing, Zoho argued that if the Court chose to define "call manager" functionally, the Court should not limit "call manager" to a particular server. (Markman Hr'g, Dkt. 47). Specifically, Zoho contended that the proper construction of "call manager" could include a combination of software and hardware. (*Id.*). The Court agrees that Claim 34 does not impose the limitation that "call manager" requires a particular server and accordingly construes "call manager" in terms of its functionality only.

('203 Patent at 16: 58–65). Zoho contends that Claims 35, 36, 38, and 39 are invalid for indefiniteness under 35 U.S.C. § 112 because they improperly combine system and method claims. (Zoho Br., Dkt. 39, at 14 (citing *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005)). Specifically, Zoho argues that the "presence of user steps" alongside system elements makes it "unclear whether infringement of these claims occurs when one creates a system or when the method steps are performed." (Zoho Br., Dkt. 39, at 16). VisiCon, on the other hand, argues the claims are not indefinite because they merely "include functional language describing the underlying environment in which the system works." (VisiCon Br., Dkt. 40, at 9). While VisiCon concedes that the claims "make reference to host user selections," it insists "such reference is in the context of the capability of the interface program rather than claiming the user's act of selection." (*Id.* at 11).

A patent specification must "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112(b). This definiteness provision requires "that a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). A single claim covering "both a system and a method for using that system" is invalid for indefiniteness because "it does not apprise a person of ordinary skill in the art of its scope." *IPXL Holdings, L.L.C.*, 430 F.3d at 1384. This is so because a claim that recites both a system and a method for using that system may make it "unclear whether infringement . . . occurs when one creates an infringing system, or whether infringement occurs when the user actually uses the system in an infringing manner." *MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1313 (Fed. Cir. 2017). Importantly, system claims with "permissible functional language used to describe the capabilities [of the system]," rather than the activities of the user, are not invalid for indefiniteness. *Id.*; *see also UltimatePointer, L.L.C. v. Nintendo Co.*, 816 F.3d 816, 827 (Fed. Cir. 2016) (holding that the

12

claim at issue was not invalid for indefiniteness because the term "data generating" described the structure's capability and did not require that any data actually be generated by the user).

On the issue of indefiniteness, both parties agree that *MasterMine* is instructive. (Markman Hr'g, Dkt. 47). In *MasterMine*, the claim at issue stated as follows:

> a reporting module installed within the CRM software application . . . wherein the reporting module installed within the CRM software application *presents* a set of user-selectable database fields as a function of the selected report template, *receives from the user a selection* of one or more of the user-selectable database fields, and *generates* a database query as a function of the user selected database fields.

874 F.3d at 1315 (emphasis in original). While the claim in *MasterMine* included the active verbs "presents, receives, and generates," the Federal Circuit determined that these verbs constituted "permissible functional language used to describe capabilities of the 'reporting module'"—rather than activities performed by the user—and thus did not improperly combine system and method claims *Id.* Here, VisiCon contends that like the claim in *MasterMine*, the reference to user action in the claims at issue merely describes the interface program's capability. (Markman Hr'g, Dkt. 47). Any reference to host user's selection, contends VisiCon, "is in the context of the capability of the interface program." (VisiCon Br., Dkt. 40 at 11).

Zoho distinguishes the present case from *MasterMine* by noting that "[t]his is not a situation where the method steps are properly characterized as system capabilities or configurations" as they were in *MasterMine*. (Zoho Br., Dkt. 39, at 16). Rather, Zoho insists, the claims' language denotes user action, not system capability. (*Id.* at 16 (citing *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1318 (Fed. Cir. 2011)). Thus, Zoho contends, the present claims are more like those in *Katz*, where the Court determined the patent impermissibly combined system and method claims because the terms "wherein . . . callers digitally enter data" and "wherein . . . callers provide . . . data" did not refer to the system's functional capability, but instead represented user action. 639 F.3d at 1318.

The Court concludes that claims 35, 36, 38, and 39 are invalid for indefiniteness because they include both system and method claims. Here, as in *Katz*, the claim "wherein the host user [ ] selects" represents a method step performed by the user. ('203 Patent at 14:61–62). Unlike the claims in *MasterMine*, the claims at issue here do not merely contain "permissible functional language to describe the capabilities of the claimed system"; rather, they impermissibly claim the user's act of selection alongside system claims and accordingly blur the scope of the claimed invention. 874 F.3d at 1316. Because the presence of user steps makes it unclear whether infringement occurs when one creates an interface program for real-time application sharing or when the user selects the documents to be shared, the claims do not "apprise a person of ordinary skill in the art of its scope" and are invalid for indefiniteness under 35 U.S.C. § 112. *IPXL Holdings, LLC*, 430 F.3d at 1384.

With respect to independent claims 35 and 38, the parties also dispute the construction of the terms "substantially real-time," "document," and "automatically." Because the Court has determined that claims 35 and 38 are invalid for indefiniteness, *see supra* Part II. A. 4, it need not construe these terms. Therefore, the Court will proceed with construing the remaining claims in the '392 Patent.

### B. The '392 Patent

The '392 Patent describes a method for establishing an operational association between a user's computer and that user's telephone. ('392 Patent at 1:62–65). While prior systems required users to preregister with the system and remember their unique access codes, the patent attempts to overcome these shortcomings by "(1) generating a unique temporary code when a data connection is established between the participant and said conference call system; (2) displaying the code over the data connection to the participant on that participant's computer screen; and (3) instructing the participant to enter the code over his telephone connection to the conference call system." ('392 Patent at 2:39–45). The parties dispute the meaning of terms within claim 1 of the '392 Patent.

14

1. **Claim 1 Preamble**

| Term to be Construed | Plaintiff's construction | Defendant's construction |
|---|---|---|
| Preamble to claim 1 | Limiting | Not limiting |

The parties dispute whether the preamble to claim 1 is limiting. Claim 1 of the '392 patent states:

> A method of operationally associating a participant's telephone connection to a conference call system with a data connection from said participant's computer screen to said conference call system, said conference call system establishing voice connections between itself and multiple conference call participants, said method comprising the steps of:
>
> generating a unique temporary code when a data connection is established between said participant and said conference call system;
> displaying said code over said data connection to said participant on that participant's computer screen; and
> instructing said participant to enter said code over his telephone connection to the conference call system.

('392 Patent 18–31). Zoho contends the preamble is limiting because it "provides the antecedent basis for at least five different terms used through the body of claim 1." (Zoho Resp., Dkt. 43, at 11). For example, Zoho argues that without the preamble, claim 1 requires only that a code be generated and displayed along with instructions, which "do[es] not make sense without the preamble, let alone constitute an invention." (Zoho Br., Dkt. 39, at 25). VisiCon, meanwhile, argues that the preamble is not limiting because it merely describes a purpose or intended use of the invention and the three-step method does not rely upon the preamble to "give life, meaning, and vitality to the claims." (VisiCon Resp., Dkt. 44, at 15 (quoting *Kropa v. Robie*, 187 F.2d 150, 861 (C.C.P.A. 1951)).

The Court concludes that the preamble to claim 1 is limiting. Deleting the preamble would leave dangling gerund phrases that do not describe a structurally complete invention. *See Catalina*

*Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,* 289 F.3d 801, 808 (Fed. Cir. 2002) (noting that "a preamble generally is not limiting when the claim body describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention."). As Zoho rightly notes, "[w]ithout the preamble, the claim requires only that a code be generated and displayed along with instructions." (Zoho Br., Dkt 39, at 25). Moreover, the preamble provides the antecedent basis for terms in the claim body. ('203 Patent at 8:25–27). Specifically, the term "said conference call system" in the body of claim 1 derives its meaning from the particular conference call system "identified and defined in the preamble." *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003). Because the body of the claim does not describe a structurally complete invention without the preamble, and terms in the claim body rely on the preamble for antecedent basis, the Court concludes that the preamble to claim 1 is limiting.

2. **"when"**

| Term to be Construed | Plaintiff's construction | Defendant's construction |
|---|---|---|
| "When"<br><br>"generating a unique temporary code *when* a data connection is established between said participant and said conference call system" ('392 at 8: 25-27).<br><br>'392 Patent, claim 1 | No construction needed | "at the moment" |

The parties dispute the meaning of the term "when" as used in claim 1 of the '392 patent. Claim 1 states, in relevant part: "generating a unique temporary code *when* a data connection is established between said participant and said conference call system." ('392 Patent at 8:25–27) (emphasis added). In its briefing, VisiCon argues that "when" does not require a construction because "when" is a "common temporal term." (VisiCon Br., Dkt. 40, at 19). VisiCon contends that "when" describes a temporal limitation on how long the code is valid (only for a limited period of

16

time) rather than a requirement that the code be generated *at the moment* a data connection is established. (*Id.*). At the hearing, VisiCon further argued that the claim does not require a code to be generated at the moment the data connection is established; if the code is generated a few seconds later or after the recognition of a voice connection, that would fall within the scope of the claim. (Markman Hr'g, Dkt.47).

Zoho proposes that the term "when" as used in claim 1 means "at the time" and contends this construction is "faithful to the description throughout the patent specification of how the temporary code is generated." (Zoho Resp., Br., Dkt. 43, at 12). Zoho further contends that VisiCon's interpretation fails to give meaning to all the words in the claim. (*Id.*) Specifically, Zoho notes that the temporal limitation on how long the code remains valid "is already captured by the term 'temporary' in the phrase 'generating a unique temporary code'" and "[t]o suggest that the additional limitation of 'when a data connection is established' means the same thing as 'temporary' would render the words redundant and deprive them of any meaning.'" (*Id.*).

The Court adopts Zoho's construction of "when" to mean "at the time."[2] This construction is most consistent with the specification description of the '392 invention. (*See, e.g.*, '392 Patent at 4:66–67 ("dynamically generating unique participant codes at the time when participants join the conference."); *id.* at 6:3–4 ("If the user then goes to the web site and clicks on the View button, the system generates a temporary match code"); *id.* at 7:47–50 ("a participant goes directly to a URL that already includes the access code. As before, a PIN is automatically generated); *id.* at Fig. 3 (steps 45–49, 65–67)). Because the code is "intended to control access" it makes sense that the code is generated "at the time" the data connection is made and thus before the user connects via telephone. ('392 Patent at 8:25–31; VisiCon Resp. Br., Dkt. 44, at 16 ("It does not make sense that

---

[2] While the Court notes that "when" might ordinarily not require a construction because its plain and ordinary meaning is clear, VisiCon's arguments at the hearing indicated its conception of "when" would not comport with its ordinary meaning. For this reason, the Court opts to provide a construction for the term.

17

the code is generated after a user joins the conference because the code is intended to control access.")). Moreover, VisiCon's contention that "when" is merely a temporal limitation on the code's duration would render the term "temporary" in the phrase "generating a unique temporary code" superfluous. *Elekta Instrument S.A. v. O.U.R. Sci. Int'l, Inc.*, 214 F.3d 1302, 1307 (Fed. Cir. 2000) (rejecting a claim construction that would render another claim term superfluous). "When" must have some additional meaning and "at the time" is the construction that best comports with the specification.

### III. CONCLUSION

For the reasons given above, the Court construes the disputed claims as explained above. No further claim terms require construction.

**SIGNED** on November 26, 2019.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE